**CITY OF HOUSTON, Appellant,**

v.

**Lee M. FOX, Appellee.**

**No. 14984.**

Court of Civil Appeals of Texas.

Houston.

Feb. 16, 1967.

Rehearing Denied March 16, 1967.

William A. Olson, City Atty., Homer T. Bouldin, Trial Supervisor, Joseph G. Rollins, Senior Asst. City Atty., Houston, for appellant.

Sears & Burns, Robert L. Burns, Houston, for appellee.

COLEMAN, Justice.

This is a suit for damages to real estate caused by the loss of reasonable access to the street on which the property fronted as a result of the construction of an underpass by the City of Houston. At a trial before the court without a jury, appellee was awarded $2,500.00.

Appellee owned a lot at the corner of Broadway and Erath Streets in the City of

Houston, Texas. Broadway is one of the principal streets leading to the downtown section of the City of Houston. It was a four-lane paved street with a high traffic count. Erath was a cross street improved with gravel or shell. It had two railroad tracks on the north part of the right of way. The City eliminated one set of the railroad tracks and relocated the other line in the center of the Erath Street right of way. It then eliminated the grade crossing by constructing an underpass on Broadway. This underpass required a substantial lowering of the grade under Erath Street and for a considerable distance on either side thereof. However, within the right of way of Broadway the City constructed a frontage roadway 17 feet in width at grade level on both sides of the underpass terminating at the railroad track.

There has been no substantial impairment of the access to Erath Street since two-way traffic has been authorized on the south side of the railway track. The situation is somewhat different with regard to Broadway. As is shown by the sketch included, in order to go north on Broadway from the Fox

property it is necessary to go down the abutting frontage roadway south to Magnolia Street and make a left turn into the northbound depressed roadway on Broadway. To reach this property from a southerly direction off Broadway, it is necessary to take the easterly frontage road at Broadway, proceed to Erath, turn left across Broadway, and turn left again on the westerly frontage road. To go to the property from a northerly direction off Broadway, it is necessary to turn left at Magnolia and enter the easterly frontage road, turn left at Erath across Broadway, and again left into the westerly frontage road, or the motorist could turn from Broadway right into Magnolia and thence around the block to the right.

There was testimony that the highest and best use for the property before the under-

pass was constructed was for commercial or retail outlet purposes, but that after its· construction the best use would be for some type of wholesale operation. By reason of this change in use the value of the property was decreased. The principal factors for this loss of value were the difficulty of access to and from the property from Broadway, and the fact that because that street was depressed the property could not be readily seen from Broadway.

The problem with which we are faced has been given thorough consideration by the Supreme Court of Texas in recent cases. DuPuy v. City of Waco, 396 S.W.2d 103 (Tex.Sup.1965); Archenhold Auto Supply Co. v. City of Waco, 396 S.W. 2d 111 (Tex.Sup.1965). No useful purpose would be served by reviewing previous decisions. These decisions establish the duty of the trial court to determine from the facts in each case whether or not there has been a compensable damaging under the eminent domain section of the Texas Constitution resulting from loss of access to property. This determination is a question of law. If the property owner has reasonable access to his property after the construction of the public improvement, there has been no *compensable* damage to his easement of access.

In this case it is obvious that appellee's property is less valuable as a site for a retail business because of the construction of the underpass. It is true that appellee's access to the side street has not been materially changed, and that he has access, though substantially less convenient than before, to Broadway. It is our opinion that a material consideration in determining the question of reasonable access is the highest and best use of the property. The value of this property as a site for a retail business has been materially reduced by the construction of the underpass which in effect moved the property to a side street from a thoroughfare.

The judgment of the Trial Court is affirmed.