**The STATE of Texas, Appellant,**

v.

**L. B. BUCK et ux., Appellees.**

**No. 714.**

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 29, 1972.

Rehearing Denied Jan. 18, 1973.

Donald McDade Keith, Houston, for appellant.

Harry J. Schulz, Three Rivers, for appellees.

OPINION

NYE, Chief Justice.

This is a condemnation proceeding. The State condemned a 36.312 acre strip of land out of the center of a 177.8 acre tract owned by L. B. Buck and wife for the construction of a controlled limited access highway. The case was tried before a jury in the County Court of Live Oak County, resulting in a verdict for the landowner in the amount of $21,779.80.

The only issues submitted were the standard Carpenter issues (126 Tex. 604, 89 S.W. 2d 194, 1936) to which the jury found that the value of the land taken was $14,524.80 and the difference in value between special issue number 2 and special issue number 3, (being the damages to the remainder) was $7,255.00. The market value of the land taken (special issue No. one) is not challenged on appeal. The State's main complaint in this case is that the jury's award to the landowner for the damages to the remainder was excessive in the amount of $3,550.00 in that only $3,705.00 was a compensable element of damage.

The landowner owned a stock farm fronting on Highway 9. There was a farm house, a water well, small barn and the pasture was cross fenced by a system of fencing that allowed rotation of the pastures and inspection of the stock as they moved to and from the well.

The 36.312 acres condemned was a strip running approximately through the middle of the tract, leaving 77 acres on the west side of the highway, and 63 acres on the east after the taking. The west side was bordered by State Highway 9 and the east side by Interstate Highway 37 for which the strip was condemned. There is no access on or off IH 37 from the west tract. The east tract has only one access route, a two-way frontage road from IH 37 on its west side. Several miles to the north and several miles to the south are farm to market roads with overpasses which would permit access from the landowner's east tract to the west tract and vice versa.

But it required the landowner to travel at least 7 miles to get from one side to the other and back.

Because of the condemnation, the farm-house, water well and barn were cut off and located on the east tract. Other improvements, including some of the fencing and cross fencing and landowner's mail box were located on the west tract fronting State Highway 9. Although there was a drainage culvert between the two tracts under IH 37 all of the expert witnesses agreed that this type of access under IH 37 was not usable and had no practical application. Evidence showed that of the nearly three miles of interior cross fencing before the taking, only about one mile of such fencing was still functionable and useful after the taking. The witnesses agreed that the State had refused to build and maintain fences along the right of way of the condemned property. This expense and the future maintenance would be borne by the landowner. The undisputed testimony was that the highest and best use of the property was either as a stock farm or to be utilized for row-crop farming. At least one of the witnesses testified that because of the smaller size of the two severed parcels (after the taking) the divided farm would no longer be practical to convert back to row-crop farming; thereby depriving the owner or any prospective purchaser of putting the land back into one of its former highest and best uses. It was undisputed that the condemnation had cut off and denied the owner freedom of movement and internal access which the tract of land enjoyed prior to the taking. The witnesses testified that prior to the taking, the landowner had complete freedom of rotation (of his cattle), this no longer exists.

The State's main complaint centers around some of the testimony of some of the witnesses who testified on cross-examination. They stated in effect that some of the elements of damages that they considered were the circuity of travel by the landowner to his mail box, to tend to his cattle, to transport his bull, his tractor and his implements. This the State says is non-compensable damages.

The credentials of the witnesses were not challenged. They were qualified as either expert or lay witnesses to give testimony as to the market value of the land. The testimony of each witness was not challenged on appeal as to their testimony of comparability of sales of other lands in the vicinity. The single factor challenged is that each witness referred to the indirect or round-about requirement of travel by the landowner in the performance of his farming and ranching functions on the separated tracts of land. The State asserts that this testimony was excludable and should not have been considered by the jury. The State's motion in limine to this effect was overruled by the trial court.

Mr. Malcolm Slay, the landowner's chief expert witness, testified as to comparable sales. After setting forth a number of comparable sales he was then asked to give his definition of market value. He stated that it was "that price that a willing buyer will pay and a willing seller will take for a parcel of land, both of them knowing the *use to be made of that property* and neither one of them having any compulsion to buy or sell." (emphasis supplied) He then testified that based on his knowledge and experience, he was of the opinion that the reasonable market value of the land in question was $350.00 an acre before the taking, and $275.00 per acre after the taking, a difference of $75.00 an acre. On direct examination he was asked to give those elements he felt had a bearing on the decline in value of such property. He answered that there would be an increase in fencing required because the State was not going to construct nor maintain the fence along the right-of-way, that an additional well and attendant equipment was needed to water the stock on the severed property; that there would be a transportation problem in getting the stock and equipment from one side of the land to the other side; that there would be a need for additional loading pens and storage barns on the severed tract as well; and that since the mail box was on Highway 9, there would be additional travel for the landowner to get his mail. All of

this would have a bearing on the market value of the remaining land. The expert witness was then asked:

"Q Are these all items that a prospective purchaser would consider in buying the property?

A Yes, sir.

Q What other items?

A Well, the trips necessary to go to and receive the daily delivery of mail on the Highway 9."

On cross-examination by the State, the witness recounted the dollar and cent value that he put on each of these items. The witness then testified that he considered the cost to the landowner to drive from his residence to his mail box each day over a 20 year period. Putting down the figures he figured the cost of the travel to pick up the mail was $6585.00; the cost of travel to tend to his cattle at $2731.00; the cost to transport his bull, $606.00; the cost to transport the tractor $500.00; the maintenance expense to the fence $1500.00; cost of additional improvements $3700.00; a total of the various elements of damage at $15,676.00. However, he further testified that he made no attempt to place a dollar value of damage on each separate and individual item of expense. Slay repeatedly explained to State's Attorney that such figures were no more than a checklist to check the reasonableness of his opinion of market value of the remaining land.

The witness stated that he used these figures to help him in arriving at an opinion of his own of what the property should sell for, before the taking and what it should sell for, after the taking. Although the witness's testimony on these particular elements of damage on which he placed a dollar and cents value showed a total calculation of $15,676.00, the difference he testified to of the before and after value of the remainder was $10,612.50. This, we believe, is evidence that he did not itemize any particular element of damage, but only referred to this matter in arriving at his opinion. The jury found that the total damages to the remainder was $7,255.00.

We believe that the objections to such evidence of the dollar value of the separate items went to the weight of the testimony of the witnesses, and not to its admissibility. Even if the inclusion of such evidence was error, it was harmless and cumulative of other evidence that the jury could have found was the difference in the before and after value of the landowners remaining property. Rule 434, note 101, Texas Rules of Civil Procedure. This is evidenced by the fact that the jury found that the after value of the landowners' property was almost the same value as was testified to by the State's own expert witness. Other expert testimony supported the jury's answer to the "before value". The range of values in the testimony of the various witnesses and the findings of the jury was as follows:

| Witness | Value Before | Value After | Difference |
|---|---|---|---|
| Slay * (landowner's expert witness) | $49,525.00 * | $38,912.50 * | $10,612.50 |
| Buck (Landowner) | 56,600.00 | 45,987.00 | 10,613.00 |
| Hayes | 60,138.00 | 49,525.00 | 10,613.00 |
| Porter | 56,600.00 | 48,110.00 | 8,490.00 |
| Gaston (State's expert witness) | 52,200.00 | 48,295.00 | 3,490.00 |
| Jury's Finding | 56,000.00 | 48,745.00 | 7,255.00 |
| | (Special Issue 2) | (Special Issue 3) | |

(*Not including improvements which Slay valued at $10,000.00).

The appellant attempts to compare the circuity of travel in this case to the situation where there has been a loss of trade from the travelling public caused by a diversion of traffic. Citing Pennysavers Oil Company v. State, 334 S.W.2d 546 (Tex.Civ.App.—San Antonio 1960); State v. Baker Bros. Nursery, 366 S.W.2d 212 (Tex.Sup. 1963) and Holbrook v. State, 355 S.W.2d 235 (Tex.Civ.App.—Eastland 1962). These cases are distinguishable. In the Pennysavers case it was held that:

" . . . If a Freeway is built in such a manner as to deny a landowner any access to such highway, where he theretofore had full access to a conventional highway, then unquestionably his right of access has been taken from him, and the taker must pay him for his property right which it has taken from him . . . But, as here, where all that has been done is that the conventional highway upon which appellant's property abuts has been reduced to a frontal or server road, furnishing limited access to the Freeway, which has been constructed just beyond the old conventional road, appellant has not lost its full right of access to the new Freeway. . . ."

The Court went on to say that

"The State has the right under the provisions of Art. 6674w, supra, and its police power, to provide for one-way traffic, no U turns, division barriers, no left or right turns, traffic lanes, speeding and parking regulations, circuitous routes; for the changing of highways generally, and is not responsible for loss of trade to abutting landowners as a result of the exercise of this police power, so long as it does not amount to a complete taking of the right of access. . . ." Citing authorities.

■ The situation confronting us in this case is different. Here a part of the land has been taken and the remainder has been damaged by the taking. This is undisputed. All such matters that may affect the use, and the future enjoyment of the remaining property in question may be considered, not in themselves as elements of damage, but overall as affecting the market value of the remaining damaged land. Where there is a partial taking, the landowner is entitled to the market value of the land taken plus the damages of the remainder caused by the taking, as shown by the difference in market value before and after condemnation. The determination of market value is largely dependent on opinion evidence. South Texas Electric Cooperative, Inc. v. Ermis, 396 S.W.2d 955 (Tex.Civ.App.—Corpus Christi 1965).

■ In determining the amount of severance damages (this is shown by the before and after value of the property) the landowner has the right to introduce evidence of anything that would affect the value of the land in the eyes of a prospective buyer or anything that makes it less valuable to the owners. The rule that is followed in this State was announced in State v. Carpenter, 126 Tex. 604, 89 S.W. 2d 194, 199 (Tex.Com.App.1936):

" . . . In arriving at this second item of damage the parties would have the right to introduce evidence of everything that would tend to affect the value of the land, in the estimation of a proposed purchaser, or that would tend to make it more or less valuable to the present owner, such as the shape in which the tract will be left; the increased amount of fencing, if any, that will be required; the increased expenditures made necessary to provide water; the added facilities, if any, provided for travel to the owner of the land. But this evidence is introduced, not as constituting the measure of damages, but as elements to enable the jury to arrive at the correct measure, which, as above stated, is the lessened value of the tract, if any, caused by these different elements, when all are taken into consideration."

See Clements v. Fort Worth & D. S. P. Ry. Co., 7 S.W.2d 895 (Tex.Civ.App.—

Amarillo 1928) ; Wolsch v. State, 77 S.W. 2d 1062 (Tex.Civ.App.—Eastland 1934) ; State v. Reeh, 434 S.W.2d 416 (Tex.Civ. App.—San Antonio 1968) ; Brazos River Conservation and Reclamation District v. Costello, 169 S.W.2d 977 (Tex.Civ.App.— Eastland 1943) ; City of San Antonio v. Michalec, 418 S.W.2d 358 (Tex.Civ.App.— San Antonio 1967) ; Rayburn's Texas Law of Condemnation, § 106(1) Supplement, 1970–1971.

■■■ Appellant further complains that the findings of the jury as to values of the remainder before and after are excessive and against the great weight and preponderance of the evidence. The amount of damages is always a question of fact before the jury. Unless the damages are so excessive or grossly inadequate as to offend the conscience of this Court, the findings of the jury will not be disturbed on appeal. We cannot substitute our judgment of values for that of the jury. We find that the award is well within the limits fixed by the testimony of the witnesses and is not excessive. All of appellant's points have been considered and are overruled.

Judgment of the trial court is affirmed.