STATE of Texas and City
of Austin, Appellants,

v.

AUSTEX, LTD., et al., Appellees.

No. 3–90–172–CV.

Court of Appeals of Texas,
Austin.

June 12, 1991.

Rehearing Denied July 17, 1991.

Iris J. Jones, City Atty., Jim Mattox, Atty. Gen. of Texas, Lou McCreary, Executive Asst. Atty. Gen., Austin, for City of Austin and State.

Before POWERS, JONES and KIDD, JJ.

POWERS, Justice.

The trial-court judgment awards Austex, Ltd. and Cavendish Holdings, Ltd. damages in a statutory eminent-domain proceeding initiated by the State and the City of Austin. The State and the City appeal. We will affirm the trial-court judgment. For convenience we will refer to the parties as the State and Austex, omitting mention of the other parties.

## THE CONTROVERSY

Austex owns 3.76 acres of land located on the northwest corner of U.S. Highway 183 and Fairfield Drive in Austin. (See attached drawing.) There is on the tract a retail complex known as the "Town North Shopping Center." Presently, the Town North Shopping Center is directly accessible, via several driveways, from the northbound lanes of Highway 183, from Fairfield Drive, and, indirectly, from Ohlen Road through the neighboring Target lot.

The State plans to raise the main lanes of Highway 183 approximately 37 feet above ground, converting the thoroughfare to a controlled-access highway, with ramps connecting the elevated main traffic lanes to parallel frontage roads on either side. After completion of the project, the Austex tract will abut the northbound frontage road. As a result, automobile traffic on the main traffic lanes will have only indirect access, via the ramps and frontage roads, to and from the Austex tract.

In order to comply with state and federal regulations, the State was required to expand its existing right-of-way by 6⅔ feet onto the Austex property, taking a strip of 1,275 square feet of that tract as indicated in the drawing. To acquire the narrow strip and to fix the damages payable therefor, the State brought the present statutory cause of action in eminent domain. Tex.Prop.Code Ann. §§ 21.001–.065 (1984 & Supp.1991).

The jury fixed the damages at $18,932, for the fair market value of the land taken, together with $200,000 for the reduction in the fair market value of the remaining part of the tract. The trial court rendered judgment accordingly and the State appeals.

## EVIDENCE OF NON–COMPENSABLE "PROPERTY" INTERESTS

At trial, Austex adduced the testimony of an expert witness who gave his opinion that the State's modification of the highway would reduce the fair market value of that part of the Austex tract from which the narrow strip would be severed. He explained his opinion as follows: the elevation of the main traffic lanes would obscure the shopping center from the view of travellers in those lanes; the plan would re-route automobile traffic from the ground-level streets to the elevated lanes, resulting in less traffic at grade and more indirect communication between the remainder of the parcel and the main traffic lanes; and the construction activity required by the project would impose upon the remainder of the tract various inconveniences.

In points of error one through four and six, the State complains the trial court erred when it admitted, over objection, the explanatory testimony given by the witness regarding the various factors mentioned. The State reasons as follows: (1) an owner of real property has no "property" right in such intangible incidents of ownership as "visibility" and existing traffic volume or patterns, and cannot, in consequence, recover damages when they are altered; (2) while a greater circuity of travel may occasionally reach the level of a compensable injury, this is true only when it is determined that there exists a "material and substantial" impairment of the owner's "access" to and from his tract, which Austex failed to establish in the present cause; and (3) any injurious effect attribut-

able to the temporary construction activities or the planned work as a whole amounted to "community damages," and is not legally compensable in an eminent-domain proceeding.

Austex did not adduce the evidence on a theory that traffic pattern and volume, "visibility," and such amounted to independent items of incorporeal property taken or damaged in the condemnation along with the physical land described in the State's petition, entitling Austex to additional compensation by reason of their status as "property." Instead, Austex adduced the evidence on a theory that it established an adverse *"effect* of the condemnation on the value of [Austex's] *remaining* property," in the words of § 21.042(c) of the Property Code, Tex.Prop. Code Ann. § 21.042(c) (1984) (emphasis added). That statute applies when a part only of an owner's real property is taken by condemnation and thereby severed from his remaining property. The statute requires that in such cases an estimate be made of the extent of any injury and benefit accruing to the *remaining* property, by reason of the condemnation, and that this effect enter into the calculation of the owner's damages.

We considered these matters at length in *State of Texas and City of Austin v. Robert M. Schmidt, et al.,* 805 S.W.2d 25 (Tex. App.—Austin 1991, writ filed), in which we handed down an opinion after the present cause was submitted. In *Schmidt,* we attempted to consider, categorize, and harmonize the many judicial opinions bearing on these vexing distinctions, and we concluded that such evidence was admissible when offered to show the "effect of the condemnation on the value of the owner's remaining prop-

erty." § 21.042(c). The same issues are raised here. We adhere to *Schmidt* and overrule the State's points of error one through four and six, which relate to the claimed inadmissibility of the witness's testimony referring to loss of visibility, re-routing of automobile traffic, reduction of traffic volume, and the temporary inconvenience attributable to construction activities. We also overrule, on the same basis, the State's points of error contending that the trial court erred when it failed to instruct the jury regarding such evidence.[1]

## EVIDENCE OF AN UNACCEPTED OFFER TO SELL

■ Austex's expert witness was also permitted to testify that he considered, in arriving at his opinion, that Austex had entered into a listing agreement with a broker, in 1988, in which Austex had agreed to sell its property for $1,500,000 on specified terms. The trial court admitted the testimony over the State's objection that the listing agreement was no more than an unaccepted offer to sell the property and evidence of it was not admissible for any purpose. In its fifth and thirteenth points of error, the State complains the trial court erred in overruling the objection and in refusing to instruct the jury that unaccepted offers to sell real estate are not admissible to prove damages.

■ We need not consider whether admission of the testimony was reversible error. The State subsequently introduced the listing agreement in evidence for the stated purpose of impeaching the same witness on a different issue, without requesting a limiting instruction that the jury consider the agreement for impeachment purposes alone.[2] The

---

1. In points of error seven, nine through twelve, and fifteen, the State contends the trial court erred by failing to give and by not permitting the condemnor's counsel to argue to the jury various instructions limiting the jury's consideration of evidence of certain of the above-mentioned factors and prohibiting altogether their consideration of evidence of other items and lost business profits. We overrule the points of error for the reasons stated in *Schmidt.*

2. When a party objects to certain testimony and the objection is overruled, he is entitled to treat the court's ruling as "the law of the trial" and to explain or rebut the evidence which has been

admitted in spite of his objection. The objecting party will not waive error simply by later cross-examining the witness about the testimony to which he previously objected. McCormick, The Law of Evidence, § 55, at 129–30 (1954). The present situation, however, is not one in which the State introduced the listing agreement in order to explain or rebut the testimony of Austex's expert witness regarding the existence and contents of the listing agreement. Although the record is not clear on the matter, the State seems to have offered the listing agreement into evidence in order to impeach Austex's appraisal witness on a statement he had made during his

contents of the listing agreement were substantially the same as the contents attributed to the agreement by the witness in his testimony. Any error in the admission of testimony is rendered harmless if the objecting party subsequently permits the same or similar evidence to be introduced without objection. *Slayden v. Palmo*, 108 Tex. 413, 194 S.W. 1103, 1104 (1917); *City of San Antonio v. Vela*, 762 S.W.2d 314, 317–18 (Tex.App. 1988, writ denied); *New Hampshire F. Ins. Co. v. Plainsman Elevators, Inc.*, 371 S.W.2d 68, 72 (Tex.Civ.App.1963, writ ref'd n.r.e.). We hold accordingly and overrule the State's fifth and thirteenth points of error.

## COMMENT ON THE WEIGHT OF THE EVIDENCE

■ In its fourteenth point of error, the State contends the phrasing of the second jury question constituted a comment on the weight of the evidence in violation of Tex. R.Civ.P.Ann. 277 (Supp.1991). The question stated as follows:

> What was the decrease, if any, in fair market value of the [remainder of the tract], as improved, immediately after the condemnation ..., taking into consideration the effect of the condemnation on the value of the remaining property?

The State contends, as it did at trial, that this form of the question constituted a comment on the weight of the evidence because it assumed some effect on the remainder by reason of the condemnation. The omission does not justify reversal of the judgment, however, unless the charge as a whole influenced the jurors' minds on the controlling element of the interrogatory—whether the condemnation caused a decrease in the market value of the remaining part of the tract. *Texas Employers Ins. Ass'n v. McKay*, 146 Tex. 569, 210 S.W.2d 147, 148–49 (1948);

*Russell v. Great American Indemnity Co.*, 127 Tex. 458, 94 S.W.2d 409, 410 (1936).

■ We conclude the phrasing of the issue constituted an incidental comment because it assumed the condemnation had *some effect* on the remainder. The assumption did *not* imply, however, that there was some *decrease* in the market value of the remainder—the controlling element of the question. The assumption was neutral on that element. We hold, in consequence, that the erroneous assumption did not amount "to such a denial of [the State's] rights as was reasonably calculated to cause and probably did cause rendition of an improper judgment." Tex. R.App.P.Rule 81 (Pamph.1990); *McKay*, 210 S.W.2d at 149. We overrule the State's fourteenth point of error.

The State relies upon *Uehlinger v. State*, 387 S.W.2d 427 (Tex.Civ.App.1965, writ ref'd n.r.e.). *Uehlinger* is distinguishable because the erroneous assumption in that case referred directly to the controlling element of the interrogatory.[3]

## HEARSAY INSTRUCTION

The expert witness further explained his opinion by reference to his use of the "comparable market approach" as a method of estimating the market value of property. In explaining his use of this "approach," the witness testified that his opinion was based in part upon the hearsay reports of owners of commercial property adjacent to other elevated, controlled-access highways similar to that planned by the State for Highway 183. These reports related that these commercial properties had sustained reduced occupancy rates and rental incomes after completion of the similar projects, which, in turn, reduced the marketability and market value of these properties.

> You are instructed that in determining the market value of the [land] taken for highway construction you shall not take into consideration the increased value of said [land] due to such highway construction.

The instruction referred directly and expressly, of course, to the jurors' calculation of the market value of the land *taken*, as the court attempted to preclude their improper consideration of enhancement attributable to the project itself.

direct examination declaring the value of the Austex property to be $2.1 million, not considering the effect of the condemnation on the property.

3. In *Uehlinger*, the trial court instructed the jury, as follows, concerning their consideration of the market value of 3.1714 acres taken in condemnation:

At the close of the evidence, the State requested that the jury be instructed as follows:

The facts or data upon which an expert bases his or her opinions may be those perceived by or made known to him at or before trial. If of a type reasonably relied upon by experts in the field, the facts or data need not be admissible in evidence.

"Hearsay" is a statement, other than one made by the declarant, while testifying at the trial, offered in evidence to prove the truth of the matter asserted.

Hearsay statements are not ordinarily admissible in evidence but certain hearsay information is sometimes relied upon by experts in forming opinions. Such information is not evidence of the facts contained therein but may only be considered as it bears on the expert's opinion.

The trial court refused to give the foregoing instruction. In its eighth point of error, the State contends the court erred in that regard.

■ The terms of Tex.R.Civ.P.Ann. 277 provide that the trial court "shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." This "rule places no additional requirement upon the trial judge in preparing his charge." *Johnson v. Zurich General Accident & Liability Ins. Co.*, 146 Tex. 232, 205 S.W.2d 353, 354 (1947). The effect of the rule is rather to *permit* instructions on the law, thereby precluding reversal of trial-court judgments on the ground that such instructions "constituted general charges not permissible in cases tried on special issues." *Zurich General*, 205 S.W.2d at 353.

In *Zurich General*, a party requested that the trial court instruct the jury "that any fact before you may be established by circumstantial evidence or direct evidence, or both." After discussing the meaning of Rule 277, the supreme court stated:

A holding that a trial court must give a charge on that question of law would logically be followed by holdings that charges of similar character with respect to many other questions of law should also be given. Such practice would be out of harmony with the purposes of trials on special issues.

*Zurich General*, 205 S.W.2d at 353–54.

■ In the present cause, the charge gave only three special instructions. Each defined a term used in the charge: "preponderance of the evidence," "fair market value," and "highest and best use." The charge submitted to the jury contained only two questions. The first inquired as to the fair market value of the strip taken; the second inquired as to any decrease in the fair market value of the land remaining. Because the two jury questions were confined to the fair market value of the land involved in this particular litigation, we cannot see how the jury could fail to understand that the hearsay reports of other owners, about their properties in other locations, were simply factors that the witness considered as he attempted to arrive at an informed estimate and opinion concerning the land involved in the present litigation. We therefore hold the trial court did not abuse its discretion in refusing to give the instruction. *See Mobil Chemical Company v. Bell*, 517 S.W.2d 245, 256 (Tex.1974); *Johnson v. Whitehurst*, 652 S.W.2d 441, 447 (Tex.App.1983, writ ref'd n.r.e.); *Steinberger v. Archer County*, 621 S.W.2d 838, 841 (Tex.App.1981, no writ); *see generally*, 3 McDonald, Texas Civil Practice § 12.14.2, at 270–274 (rev. ed. 1983). The State's eighth point of error is overruled.

### REMAINING POINTS OF ERROR

In its sixteenth and seventeenth points of error, the State complains the trial court erred in failing to disregard the jury's finding on the decrease in value of the remaining property and in failing to enter a judgment notwithstanding the verdict because there was "no support in the admissible evidence" or, alternatively, "the evidence was insufficient to support" the jury's finding. These points are contingent on our holding that the trial court erroneously admitted evidence discussed above. We therefore overrule the points of error.

In its eighteenth point of error, the State contends the cumulative effect of all the error in the trial court deprived it of a fair

trial. In light of our holdings above, we overrule the point of error.

We affirm the trial-court judgment.

ATTACHMENT