STATE of Texas and City
of Austin, Petitioners,

v.

Robert M. SCHMIDT and Richard A. Massman, Co–Trustees of the Leon A. Schmidt Children's Trust No. 1 et al., Respondents.

STATE of Texas and City
of Austin, Petitioners,

v.

AUSTEX, LTD. et al., Respondents.

Nos. D–1006, D–1509.

Supreme Court of Texas.

Oct. 27, 1993.

Rehearing Overruled Feb. 2, 1994.

Diana L. Granger, James Noble Johnson, Austin, for petitioners in No. D–1509.

John N. McClish, Austin, for respondents in No. D–1509.

James Noble Johnson, Diana L. Granger, Christa Brown, Phillip E. Marrus, Dan Morales, Austin, for petitioners in No. D–1006.

Michael M. Barron, Stephen I. Adler, Daniel M. Anderson, Austin, for respondents in No. D–1006.

## OPINION

HECHT, Justice.

■ The principal issue in these two consolidated cases is whether a landowner, part of whose property is taken by power of eminent domain to convert a roadway into a controlled access highway, is entitled to compensation for a diminution in the value of the remainder due to a diversion of traffic, an increased circuity of travel to the property, a lessened visibility to passersby, and the inconvenience of construction activities. The lower courts allowed the compensation in both these cases. *State v. Schmidt,* 805 S.W.2d 25 (Tex.App.—Austin 1991); *State v. Austex, Ltd.,* 862 S.W.2d 1 (Tex.App.—Austin 1993). We disagree and accordingly reverse the judgments of the court of appeals and render judgment against the landowners.

### I

These cases involve two adjoining tracts of land abutting U.S. Highway 183 in the City of Austin some seven miles north of downtown. One of the tracts is owned by the Leon A. Schmidt Children's Trust No. 1, and hence we refer to it as the Schmidt tract. The other is owned by Austex, Ltd., a Nevada corporation, and Cavendish Holdings, Ltd., a Maryland corporation, and we refer to it as the Austex tract. The immediate area is depicted in this schematic:

SCHMIDT TRACT

AUSTEX TRACT

HIGHWAY 183

The rectangular Schmidt tract extends some 75 feet along the highway and 200 feet back. Toward the rear of the property is a building for two tenants—at the time of trial, a personal computer software outlet and a film processing business. The area between the building and the highway is used for parking.

The 3.76–acre Austex tract surrounds the Schmidt tract on three sides and thus fronts the highway on both sides of the Schmidt tract, approximately 40 feet on one side and 150 feet on the other. There are two buildings on the Austex tract, one to the rear of the property, and the other along one side across from the building on the Schmidt tract. These buildings, known as the Town North Shopping Center, were occupied at the time of trial by a post office substation, a night club, and several retail businesses, including a bookstore, restaurant, beauty salon, video store, and office supply store. The narrower strip on the one side of the Schmidt tract is vacant. On the other side, the area nearest the highway is used for parking.

Highway 183—or Research Boulevard as it is known at this location—is a major traffic artery, and much of the land along both sides of it, like the Schmidt and Austex tracts, is used for free standing retail outlets and other commercial developments. Beyond and sometimes among these developments are residential areas. In the vicinity of the Schmidt and Austex tracts, the highway has six lanes, three for traffic in each direction separated by a grassy median, all on the same grade as intersecting streets and the surrounding property. Buildings on adjacent property, including those on the Schmidt and Austex tracts, are clearly visible from the highway. The Schmidt and Austex tracts are connected to the highway by driveways allowing traffic in the lane nearest the tracts direct access. Traffic in the opposite direction must cross the highway at an intersection and gain access by the side street, Fairfield Drive, or by returning back the opposite direction and using a driveway.

The State of Texas and the City of Austin (both of which we refer to as the State) have decided to convert Highway 183 into a controlled access highway. This change entails eliminating grade crossings, which will be accomplished in the area of the Schmidt and Austex tracts by elevating the main traffic lanes some 37 feet. As a result, the buildings below will be less visible to motorists on the elevated highway. All six lanes at grade will remain in service, and access to the tracts from those lanes will remain unchanged. Most of the traffic, however, will be diverted to the elevated main highway,

from which motorists must exit by a ramp to the lower roadway to gain access to the tracts. This route of access will be somewhat more circuitous and less convenient than at present. Construction is to be done in phases extending over a total of five years.

The alterations to Highway 183 require expansion of the existing right-of-way a little less than seven feet into the Schmidt and Austex tracts (shown by the dotted line in the schematic above) to meet minimum right-of-way requirements for federal funding of the highway construction. Accordingly, the State instituted these condemnation proceedings to take a small strip of land—about 503 square feet from the Schmidt property and about 1,275 square feet from the Austex property—along the highway frontage. The special commissioners awarded the owners of the two tracts $7,559 and $105,000, respectively, and the owners appealed.

In the case of the Schmidt tract, the owner stipulated that the value of the strip taken was $7,559, but claimed additional compensation for the decreased market value of the remainder of the tract due to two factors: the impairment of its visibility from the main highway, and the inconvenience and disruption caused by construction activities extending over a period of several years. The owners of the Austex tract also claimed compensation for a reduction in the market value of the remainder of their property due the same two factors plus two others: the diversion of traffic from the highway at grade level, and the resulting circuity of travel required to gain access to the tract. Each case was tried to a jury, who found severance damages—the diminution in the market value of the remainder after the condemnation—of $74,880 for the Schmidt tract and $200,000 for the Austex tract. The jury in the Austex case also found the value of the strip taken to be $18,932. Each trial court rendered judgment on the verdict. The State appealed only the award of severance damages, and not the awards for the land actually taken. The court of appeals affirmed both judgments.

## II

Article I, section 17 of the Texas Constitution provides in pertinent part: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made...." Very early in the State's history, we held that when part of a person's property is taken, this provision requires adequate compensation both for the part taken and any severance damages to the remainder. *Buffalo B., B. & Colo. R.R. v. Ferris*, 26 Tex. 588, 603 (1863) (applying identical language from Tex. Const. of 1861, art. I, § 14). Consistently, section 21.042(c) of the Texas Property Code now provides:

If a portion of a tract or parcel of real property is condemned, the special commissioners shall determine the damage to the property owner after estimating the extent of the injury and benefit to the property owner, including the effect of the condemnation on the value of the property owner's remaining property.

The measure for determining severance damages was established in *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194, 197–198, 200 (1936):

We are of the opinion that the proper rule for ascertaining the measure of damage to the remainder of a tract of land where a part only has been taken for public use is directly analogous to the rule which is applicable when there has been a permanent injury to land by reason of the construction of a public improvement, or the construction of an improvement by a private agency exercising the right of eminent domain. By this rule the damages are to be determined by ascertaining the difference between the market value of the remainder of the tract immediately before the taking and the market value of the remainder of the tract immediately after the appropriation, taking into consideration the nature of the improvement, and the use to which the land taken is to be put. Of course, this rule relates to the ascertainment of the damages to the property itself. There may possibly be items of special damages which may not be accurately reflected in the difference between the market value before and the market value after, but everything which affects

the market value of the land itself, having due regard for past and probable future injuries, may be accurately reflected by ascertaining the difference in value, when all the legitimate testimony is properly submitted to the jury for consideration.

\* \* \* \* \* \*

Generally, it may be said that it is proper as touching the matter of the value and depreciation in value to admit evidence upon all such matters as suitability and adaptability, surroundings, conditions before and after, and all circumstances which tend to increase or diminish the present market value. Evidence should be excluded relating to remote, speculative, and conjectural uses, as well as injuries, which are not reflected in the present market value of the property.

The rule in the *Carpenter* case, which is as settled as any in our jurisprudence can be, is the basis for the position taken by Schmidt and Austex.

Their argument runs as follows. *Carpenter* requires that all factors affecting the fair market value of the remainder be considered in determining severance damages. It cannot be denied that traffic patterns, convenience of access, visibility, and the disruption of construction activities over an extended period of time can affect the market value of property. Therefore, these factors must be taken into consideration in ascertaining severance damages. When this is done in the present cases, the State does not deny that the market value of the Schmidt and Austex tracts has diminished, nor does it challenge the amount of that diminution as found by the jury in each case. Thus, the award of severance damages was proper.

The State has three responses, and we examine each in turn.

## III

The State argues that the four elements of injury claimed by Schmidt and Austex should not be considered in assessing severance damages because they are not the kind of injuries for which compensation is due under the Constitution and the statutory provision. As authority for this assertion, the State cites several inverse condemnation cases—actions brought by landowners complaining that their property has been damaged or taken for public use without payment of adequate compensation.

The first such case is *State Highway Comm'n v. Humphreys*, 58 S.W.2d 144 (Tex. Civ.App.—San Antonio 1933, writ ref'd), which arose from the State's proposal to reroute a highway around the town of Comstock to allow motorists to avoid the downtown area, leaving the old road through town without change. Business owners along the road in town obtained an injunction against relocating the main highway, contending that the diversion of traffic caused by rerouting the main highway amounted to a taking or injuring of their property without due process. In an opinion approved by this Court, the appellate court reversed, explaining:

"The benefits which come and go from the changing currents of travel are not matters in respect to which any individual has any vested right against the judgment of the public authorities." [Citing *Heller v. Atchison, T. & S.F. Ry.*, 28 Kan. 625 (1882).] If the public authorities could never change a street or highway without paying all persons along such thoroughfares for their loss of business, the cost would be prohibitive. The highways primarily are for the benefit of the traveling public, and are only incidentally for the benefit of those who are engaged in business along its way. They build up their businesses knowing that new roads may be built that will largely take away the traveling public. This is a risk they must necessarily assume.

*Id.* at 145.

In *DuPuy v. City of Waco*, 396 S.W.2d 103 (Tex.1965), the trial court awarded a landowner damages for a diminution in the value of his property resulting from the construction of a viaduct and changes in the street in front of his property. We agreed that the landowner was due compensation, but only because he had been deprived of reasonable access to his property. We explained that allowance of damages for a deprivation of reasonable access did not conflict with *Humphreys*, which stands

principally for the propositions that an abutting property owner does not have a vested interest in the traffic that passes in front of his property; that he cannot recover for loss of trade resulting from a highway relocation; and that he is not entitled to damages because of the construction of controlled access highways in such manner as to deny direct access to the new major highway.

*Id.* at 109. In a companion case to *DuPuy,* brought by a neighboring landowner, we held that the landowner had not been deprived of reasonable access and therefore was not entitled to any compensation at all. *Archenhold Auto. Supply Co. v. City of Waco,* 396 S.W.2d 111 (Tex.1965).

In *City of Houston v. Fox,* 412 S.W.2d 745 (Tex.Civ.App.—Houston [1st Dist.] 1967), the court of civil appeals held that the degree of impairment of access to property must be considered in light of its highest and best use. So, the court reasoned, a diversion of traffic which resulted in substantially less convenient access to a retail business can be a compensable injury, even if it would not be were the property used for some other purpose. Based on this analysis, the court affirmed an award of damages to the landowner. We rejected this reasoning on the grounds that it conflicted with *Archenhold* and *DuPuy.* 419 S.W.2d 819 (Tex.1967) (per curiam). On remand, the appeals court again affirmed an award of damages to the landowner. We again reversed the appeals court and rendered judgment that the landowner recover nothing. *City of Houston v. Fox,* 444 S.W.2d 591 (Tex.1969). The same day we issued our second opinion in *Fox,* we held in *City of Waco v. Texland Corp.,* 446 S.W.2d 1, 2 (Tex.1969), "that property has been damaged for a public use within the meaning of the Constitution when access is materially and substantially impaired even though there has not been a deprivation of all reasonable access...." Applying this new test in *Fox,* we held that access to his property had not been materially and substantially impaired. We explained: "Cities may make streets narrower without violating the rights of the abutting landowner ... unless the street is so narrowed or altered as to materially and substantially impair the land-

owner's access." 444 S.W.2d at 592–593 (citation omitted). And we added: "[A]ny injury due to diversion of traffic or circuity of travel with reference to the [landowner's] property brought about by the changes in [the abutting] streets is noncompensable." *Id.* at 593.

In *City of Beaumont v. Marks,* 443 S.W.2d 253 (Tex.1969), we again allowed damages for a material and substantial impairment of access to a landowner's property due to a change in grade of nearby railroad tracks. We also held, however, that it was reversible error to admit evidence of a diminution in the value of the property due to a diversion of traffic. Citing *Humphreys,* we reaffirmed: "Diversion of traffic resulting in the necessity of using circuitous routes is not compensable." *Id.* at 257. We repeated this statement in *City of San Antonio v. Olivares,* 505 S.W.2d 526 (Tex.1974), where we held that hotel owners were not entitled to damages for the partial closure of a dedicated alley behind their property.

Thus, we have often disallowed, and never allowed, recovery in an inverse condemnation case for damages resulting from a diversion of traffic or a circuity of travel. While we have never addressed the issue of whether a landowner has a right to recover for an impairment in the visibility of his premises to passing traffic, there is no reason why recovery for this type of injury should be more available than for a diversion of traffic or circuity of travel. Just as a landowner has no vested interest in the volume or route of passersby, he has no right to insist that his premises be visible to them. *See* JULIUS L. SACKMAN & PATRICK J. ROHAN, NICHOLS, THE LAW OF EMINENT DOMAIN (3d ed. rev. 1992) § 14.13[2], at 14–310 ("It has been held that an impairment of this right [to be seen] is not a legally cognizable element of damage.").

In the one case in which we have considered a claim for damages for the inconvenience of highway construction, we have recognized that recovery may be allowed in some limited situations. In *City of Austin v. Avenue Corp.,* 704 S.W.2d 11 (Tex.1986), a restaurant owner sued for lost profits caused by reconstruction of the street and sidewalk

in front of his premises over a period of nine months. Although the trial court found that there had been a material and substantial interference with access to the premises, we held that damages could not be recovered unless there was either a total temporary or partial permanent restriction of access, or a partial temporary restriction of access due to illegal or negligent activity. *Id.* at 13. Schmidt and Austex do not claim that their injuries fall within any of these three categories. Rather, they contend that construction activities in front of their property, while not precluding access, will make it so inconvenient that businesses on the property will be damaged. We spoke to this contention in *Avenue Corp.:*

> The inconvenience and damage which a property owner suffers from these temporary obstructions are incident to city life and must be endured. The law gives him no right to relief, recognizing that he recoups his damage in the benefit which he shares with the general public in the ultimate improvement which is being made.

*Id.* at 12 (quoting *L.M.S., Inc. v. Blackwell,* 149 Tex. 348, 233 S.W.2d 286, 289 (1950), quoting in turn *Farrell v. Rose,* 253 N.Y. 73, 170 N.E. 498 (1930)).

Under the general rules of the cases we have cited, none of the four elements of injury asserted by Schmidt and Austex amounts to a taking or damaging of property that is compensable in an inverse condemnation case. Schmidt and Austex acknowledge this and concede that they would not be entitled to recover in an inverse condemnation action for any of the injuries they have alleged. They argue, however, that the rule should be different when those injuries are accompanied by a physical taking of property, as in condemnation cases. In all such cases, they say, the threshold requirement for recovery, that a taking occur, is satisfied by the fact that the condemnor has filed suit, and the only remaining issues are the value of the property taken and the injury, measured in loss of value, to the remainder. Under *Carpenter,* they insist, every factor contributing to the claimed loss must be considered, including the four asserted here.

Allowing recovery for an injury in condemnation cases when recovery is not allowed for the same injury in inverse condemnation cases creates an anomaly illustrated by the following hypothetical. Suppose in the present cases that the change in Highway 183 necessitated taking a small strip from the Austex tract only, without taking any part of the Schmidt tract. Schmidt would still contend that the value of his property had been injured to the same degree as the value of the remainder of Austex' property, since the taking of part of Austex' property did not itself contribute to any diminution in the remainder. Yet according to Schmidt and Austex' argument, only Austex could recover damages for his injury. If no part of Schmidt's property were taken, Schmidt's only recourse would be an action for inverse condemnation in which, as Schmidt and Austex concede, Schmidt could not prevail. In these circumstances, adjacent landowners would suffer identical injury, yet only one could recover, the one a part of whose property was physically taken.

Schmidt and Austex argue that this is not an anomaly but a reflection of the marketplace. They give the following illustration. A landowner may use his property in any legal way, even if it causes the value of his neighbor's property to be diminished, and the neighbor is without recourse. But if the landowner must acquire part of his neighbor's property before he can use his own in a particular way, he can expect his neighbor to charge a price for that part which will compensate him both for the part and for the diminution in the value of the remainder caused by his use of his property. This, Schmidt and Austex argue, is the situation in these cases. If the State did not need part of their property to complete the Highway 183 project, they would have no claim for damages. But the State does need part of their property, and because it does, it must pay both for that part and for the injury to the remainder caused by the use for which the part taken is essential.

The flaw in this argument is that it does not assume a willing buyer; rather, it assumes a buyer constrained to buy or abandon his plans for the use of his other property.

This buyer must decide whether to pay his neighbor more than the value of the small piece of property actually acquired, or forego his plans. The seller in this situation can certainly *try* to charge a price that will cover the value of the parcel sold as well as the loss in the value of the remainder occasioned by the buyer's use of his own property; indeed, the seller might try to charge even more, hoping that the buyer's interest in his plans will motivate him to pay a premium. The fact that a seller in the marketplace is free to take advantage of a buyer's circumstances if he can does not justify the same conduct when the buyer is the State.

The argument that a different rule applies in condemnation cases and inverse condemnation cases does not find support in our decisions. To the contrary, our decisions in condemnation cases have uniformly refused to allow severance damages based upon diversion of traffic and circuity of travel. Thus, in *Pennysavers Oil Co. v. State*, 334 S.W.2d 546 (Tex.Civ.App.—San Antonio 1960, writ ref'd), the State, as in the cases before us, condemned a small strip of property in order to convert an abutting two-lane road into a controlled access highway. The State and landowner agreed as to the value of the part taken, but disagreed as to whether there was any loss in the value of the remainder, just as the parties in the present cases have done. The trial court rendered judgment on a verdict that there was no loss to the remainder. This Court, in refusing writ, concluded that an owner of property abutting a highway has no right to unimpaired access to traffic, although he does have a right of some access. If access is completely denied, the court explained, damages must be paid, and the measure is the diminution in the value of the remainder. But if the right is only impaired, there is no entitlement to compensation. The opinion explained that

> no abutting property owner has a vested interest in the traffic that passes in front of his property, and if this traffic is diverted by the State building a road at another place, and the traveling public prefer to travel the new road and abandon the old road, the State cannot be held liable for any loss of trade suffered by an abutting landowner on the old abandoned road.

*Id.* at 549. As authority the opinion cited, among other cases, *Humphreys,* an inverse condemnation case.

In *State v. Baker Bros. Nursery,* 366 S.W.2d 212 (Tex.1963), the State again sought condemnation of part of a parcel of property in order to convert a road into a controlled access highway. The trial court granted the State's pretrial motion in limine to suppress any evidence regarding changes in traffic flow on the value of the remainder. The landowner complained of this ruling on appeal. The court of civil appeals observed that the trial court's exclusion of evidence may have been error, but it was not prejudicial. 357 S.W.2d 163, 167 (Tex.Civ.App.—Fort Worth 1962). This Court disagreed:

> The Court of Civil Appeals further held that it was error for the trial court to sustain a motion made by the State in advance of trial, which not only sought to suppress any reference by counsel to, or any evidence of, the direction of the flow of travel upon the proposed limited access highway resulting from the condemnation, but further to likewise suppress reference or evidence of any circuity of travel occasioned by such highway. This was not a case where all access to the new highway was denied, but a case where each remaining tract had access to the highway through the frontage roads alongside and parallel to the highway. Under these circumstances, there was no error by the trial court in sustaining the State's motion to suppress.

366 S.W.2d at 214. In reaching this conclusion the Court relied upon *Pennysavers.*

Much more recently, in *State v. Wood Oil Distrib., Inc.,* 751 S.W.2d 863 (Tex.1988), the trial court granted the State's motion in limine to exclude evidence that the remainder of property on which the landowner operated a truck stop had been damaged by increased circuity of travel due to construction of a highway. The court of appeals reversed. This Court affirmed the trial court. In a unanimous opinion, the Court stated:

> It is well settled that damages to a condemnee's business which result merely

from traffic being required to travel a more circuitous route to reach a condemnee's property are not compensable. [Citing *Olivares, Fox, Texland,* and *Marks.*] The question of whether there has been a material and substantial impairment of access or whether there exists merely the issue of circuity of travel is a question of law, not of fact. It is incumbent upon the trial court to make this determination prior to trial and to control the admission of evidence accordingly. Thus, the introduction of evidence on damages due to inconvenience suffered by a property owner as a result of circuity of travel is improper as a matter of law since it is a non-compensable matter. [Citing *Olivares, Texland, Marks,* and *DuPuy.*] Accordingly, the court of appeals erred in reversing the trial court on the basis of exclusion of evidence on this issue.

*Id.* at 865. All of the cases on which we relied in *Wood Oil* were inverse condemnation cases.

Thus, we have refused to allow recovery for loss of value due to diversion of traffic and circuity of travel in both condemnation cases and inverse condemnation cases. We have not considered whether severance damages should be allowed because of impaired visibility of property or disruption of use due to construction activities, but there is no reason why these two elements of injury should be treated differently than the others. The decisions of the courts of appeals involving these issues have not been entirely consistent. *Compare Olson v. Harris County,* 807 S.W.2d 594, 595 (Tex.App.—Houston [1st Dist.] 1990, writ denied) (circuity of travel not compensable); *Holbrook v. State,* 355 S.W.2d 235 (Tex.Civ.App.—Eastland 1962, writ ref'd n.r.e.) (severance damages denied for diversion of traffic, circuity of travel, and construction inconvenience); *with State v. Buck,* 489 S.W.2d 642 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.) (severance damages allowed for diversion of traffic and circuity of travel); *Milam County v. Akers,* 181 S.W.2d 719 (Tex.Civ.App.—Austin 1944, writ ref'd w.o.m.) (severance damages allowed for diversion of traffic). To the extent *Akers* and *Buck* conflict with the principles in

*Pennysavers, Baker Bros.,* and *Wood Oil,* they are disapproved.

Schmidt and Austex' argument that different rules should apply in condemnation cases and inverse condemnation cases is not supported by the decisions of this Court. While we are not prepared to insist that the two types of cases always be governed by identical rules, with respect to the elements of injury Schmidt and Austex claim, the general rule in inverse condemnation cases and condemnation cases has been the same.

Schmidt and Austex nevertheless contend that even if severance damages based upon injuries like those claimed here have been denied in condemnation cases, those cases conflict with the rule in *Carpenter* that all relevant factors must be considered in determining severance damages. While the rule in *Carpenter* may not have been applied in the cases we have cited, Schmidt and Austex argue that it should have been, and that it should be applied in the present cases. The State responds that the cases cited above establish in essence an exception to *Carpenter* for the types of damages claimed in those cases and the present ones.

Despite the broad language in some of the opinions we have cited, and the fact that we have never allowed recovery for severance damages like those claimed here, we are reluctant to hold that such damages can never be recovered. There are other reasons wholly consistent with *Carpenter* why damages should not be allowed for the types of injury Schmidt and Austex claim. We therefore turn to the State's other responses to Schmidt and Austex' *Carpenter* argument.

## IV

The State contends that Schmidt and Austex are not entitled to severance damages because the damages they claim did not result from the taking of their property, but from the State's new use of its existing right-of-way and of property taken from other landowners to widen it. We agree.

Section 21.042(c) requires consideration of "the effect of the condemnation on the value of the property owner's remaining property." The effect of the State's condemnation on

each tract in the present cases—that is, the taking of a small strip of property—is different from the effect of the State's change in Highway 183. The statute allows recovery only for the former.

We recognized this distinction in *State v. Clark,* 161 Tex. 10, 336 S.W.2d 612 (1960). There, the State decided to use property dedicated for park purposes as part of the expanded right-of-way for the elevated approach to a high level bridge over a ship channel. The owner of the property abutting the park sued for inverse condemnation. We acknowledged that a landowner has an interest in abutting property dedicated as a park, and that damages could be recovered for injury to that interest. However, we limited recovery to the diminution in value of the landowner's property due to the State's change in the use of the park, and denied recovery for a diversion of traffic or other consequences of the construction of the project generally. We explained that the landowner was

> only entitled to recover for the diminishment in value of his property caused by the diversion of the parkway to that portion of the elevated structure resting upon the parkway. His damages therefore must be assessed as though the elevated structure already existed ... and the State acquired this park property only for the purpose of widening the elevated roadway. It would be wholly inequitable to allow the [landowner] damages based on the difference in value in his property before and after the completion of the entire project when he would have suffered no recoverable damage if the construction had not been widened to include the parkway in which he asserts an interest.

*Id.,* 336 S.W.2d at 618.

The principle underlying our decision in *Clark* was established by the United States Supreme Court in *Campbell v. United States,* 266 U.S. 368, 372, 45 S.Ct. 115, 117, 69 L.Ed. 328 (1924):

> The rule supported by better reason and the weight of authority is that the just compensation assured by the Fifth Amendment to an owner, a part of whose land is taken for public use, does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking.

Although the *Campbell* decision was based on the Fifth Amendment, the rule it announced has been followed in most cases in other jurisdictions where the same issue was raised. *See* Annotation, *Compensation for Diminution in Value of the Remainder of Property Resulting from Taking or Use of Adjoining Land of Others for the Same Undertaking,* 59 A.L.R.3d 488 (1974). Although we have never referred specifically to the rule, we applied it in essence in *Clark.*

The Ninth Circuit has held that the *Campbell* rule should be applied unless:

> (1) the land taken from the condemnee landowner was indispensable to the ... project; (2) the land taken constituted a substantial (not inconsequential) part of the tract devoted to the project; and (3) the damages resulting to the land not taken from the use of the land taken were inseparable from those to the same land flowing from the condemnor government's use of its adjoining land in the ... project.

*United States v. 15.65 Acres of Land,* 689 F.2d 1329, 1332 (9th Cir.1982), *cert. denied,* 460 U.S. 1041, 103 S.Ct. 1435, 75 L.Ed.2d 793 (1983); *accord, United States v. Pope & Talbot, Inc.,* 293 F.2d 822 (9th Cir.1961). This exception is based upon the analysis in *Campbell* and employed to allow landowners to recover in the circumstances described by the exception. We agree that this exception is a necessary qualification to the *Campbell* rule.

In the present cases it is clear that the diminution in value claimed by Schmidt and Austex in their remaining property is due entirely to the State's modifications to Highway 183 and not to the use of the strip taken from each tract. The diversion of traffic, circuity of travel, and impaired visibility are all attributable to the conversion of Highway 183 to a controlled access highway. This conversion is to be accomplished, not on the small strips taken from the Schmidt and Austex tracts, but by changes in the entire roadway. Even the claim of inconvenience

due to construction is based upon activities up and down the roadway and not simply those conducted on the strips taken. These cases do not fit within the exception described in *15.65 Acres:* although the strips taken are indispensable to the project, they do not constitute a substantial part of the property devoted to the project, and the damages resulting to the remaining tracts are not inseparable from those caused by the taking. Accordingly, we conclude that Schmidt and Austex are not entitled to recover the severance damages claimed.

## V

The State also contends that the severance damages claimed by Schmidt and Austex are not allowed by section 21.042(d), which states:

> In estimating injury or benefit under Subsection (c), the special commissioners shall consider an injury or benefit that is peculiar to the property owner and that relates to the property owner's ownership, use, or enjoyment of the particular parcel of real property, but they may not consider an injury or benefit that the property owner experiences in common with the general community.

We have not often had occasion to consider what constitutes community damages. We first acknowledged the general principle against awarding community damages in *Gulf, Colorado & Santa Fe Ry. v. Fuller,* 63 Tex. 467 (1885). In that case we affirmed an award to a landowner against the railroad for the reduction in the value of his property due to the operation of trains in the abutting street. We explained:

> If by the construction of a railway or other public work an injury peculiar to a given property be inflicted upon it, or its owner be deprived of its legal and proper use, or of any right therein or thereto; that is, if an injury, not suffered by that particular property or right only in common with other property or rights in the same community or section, by reason of the general fact that the public work exists, be inflicted, then such property may be said to be damaged.

> Every government has the power to construct or to cause to be constructed public works, and insofar as such construction works an injury to the public, it can give no one a right to a private action.

*Id.* at 470.

The principle is far easier to articulate than to define. In *Gainesville, H. & W. R.R. v. Hall,* 78 Tex. 169, 14 S.W. 259 (1890), we held that a homeowner's diminution in the value of his property caused by vibration, noise, smoke, noxious vapors and cinders incident to the operation of trains on tracks about 37' away was not community damages as a matter of law but rather, a question for the jury. In *Texarkana & N.W. R.R. v. Goldberg,* 68 Tex. 685, 5 S.W. 824 (1887), we held that a homeowner had not suffered only community damages by construction of railroad tracks in the street abutting his property such that there was room for only one car to pass at a time, and sparks from trains posed a danger to his buildings. There we wrote:

> The fact that the injury was common to all other property holders on the street would not bar the plaintiff's right of recovery. The plaintiff sues for a special damage to his own property by reason of defendant's having impaired the use of the street on which it fronts. It does not affect his right to recovery that his neighbors, the owners of property fronting on the same street, have been injured in the same manner. This is a loss peculiar to plaintiff's property, and not one he suffers in common with the community generally where the property is situated.

*Id.* 5 S.W. at 826. Following *Goldberg,* we held in *Powell v. Houston & T.C. R.R.,* 104 Tex. 219, 135 S.W. 1153, 1155–1156 (1911), that a landowner suffered more than community damages to his business as a result of the diversion of traffic due to an obstruction on a nearby street to allow for construction of a railroad, even though the street in front of the property remained open, and access by that means was unobstructed.

However, we took a broader view of community damages in the context of highway construction in *Lee v. City of Stratford,* 125 Tex. 179, 81 S.W.2d 1003 (Com.App.1935).

Lee claimed that the City's abandonment of streets to allow for the construction of railroad tracks near his property made his route to school, the post office, and the main business part of the City more circuitous and difficult. The road abutting his property was not closed, and he retained direct access to it from his property. We affirmed an instructed verdict for the City, stating:

> "if the street directly in front of one's property is not vacated but the portion vacated is in another block, so that he may use an intersecting cross street, although perhaps it is not quite so short a way nor as convenient, it is almost universally held that he does not suffer such a special injury as entitles him to damages. And this is so notwithstanding the new route is less convenient or the diversion of travel depreciates the value of his property. The fact that the lot owner may be inconvenienced or that he may have to go a more roundabout way to reach certain points, it is generally held, does not bring him an injury different in kind from the general public, but in degree only. 'If means of ingress and egress are not cut off or lessened in the block of the abutting owner, but only rendered less convenient because of being less direct to other points in the city, and made so by the vacation of the street in another block, such consequence is damnum absque injuria.'"

*Id.,* 81 S.W.2d at 1004–1005 (quoting 4 EUGENE MCQUILLAN, MUNICIPAL CORPORATIONS § 1527, at 279). *Lee* did not cite *Powell* or *Goldberg.*

Speaking more generally in *Ft. Worth Improv. Dist. No. 1 v. City of Ft. Worth,* 106 Tex. 148, 158 S.W. 164 (1913), we wrote:

> In the construction of legally authorized public works, it is inevitable that benefits will accrue to the property of some persons and injury will result to that of others. If the injury that thus results from the improvement be only of such nature as is suffered from that cause in common with other property in the same community or section, the damages thus accruing are deemed merely consequential, and no right of action exists. In such cases, it is not considered that the property is "damaged" within the contemplation of the constitutional provision, and the right to compensation is denied. If, however, a public work is constructed which inflicts an injury peculiar to certain property not suffered in common with other property in the community or section, then such property is "damaged" within the meaning of the Constitution, and the law will not permit the infliction of such injury without the allowance of just compensation. . . .

> The question in all such cases is resolved by determining whether the injury is peculiar to the property in question, or is only such as is suffered from the same cause in common with other property in the same section or community; that is, whether the property is "damaged" in the true sense of the constitutional provision.

*Id.,* 158 S.W. at 168–169.

Section 21.042(d) prohibits consideration of community benefit as well as community injury. We addressed this related concept in *City of Dallas v. Priolo,* 150 Tex. 423, 242 S.W.2d 176 (1951), in which a landowner claimed injury to his remaining property after the City took a small strip to widen an abutting highway. In response to the City's argument that the change in the highway actually benefited his property, the landowner contended that any benefit was only that shared by the entire community. We concluded that it could not be held as a matter of law that the straightening of a jog in the highway in front of the landowner's property did not confer a special benefit which was not equally shared by the community.

Community benefit is also relevant when a city assesses landowners for improvements in streets abutting their property. In a case involving a paving assessment, *Haynes v. City of Abilene,* 659 S.W.2d 638 (Tex.1983), we reviewed the concept of community injury in eminent domain cases, including *Goldberg* and *Priolo,* and concluded that the mere fact that injury was common to everyone on a street would not bar recovery in such cases. Extracting from these cases, we concluded that "'special benefit' connotes an enhancement more localized than a general improvement in community welfare, but not necessarily unique to a given piece of property. A

special benefit is one going beyond the general benefit supposed to diffuse itself from the improvement through the municipality." *Id.* at 641–642.

■ In each of these cases, the analysis of whether an injury or benefit was common to the community involved consideration of the location of the landowner's property, the condemnor's project, and the effects of the latter. However, the concept of community injury and benefit is not primarily geographical. It is always true that the injury or benefit from a public project increases with proximity. While injury to several landowners on the same street is not community injury simply because they all suffer alike, it is also not special injury simply because others farther away do not suffer at all. Whether an injury is community cannot be decided simply by setting the size of the relevant area. "Community" in this context means not only where, but, more importantly, what kind. It is the nature of the injury rather than its location that is critical in determining whether it is community.

■ The diversion of traffic, inconvenience of access, impaired visibility of ground-level buildings, and disruption of construction activities of which Schmidt and Austex complain are, by their nature, a consequence of the change in Highway 183 shared by the entire area through which it runs. While one or more of these elements of injury could affect the Schmidt and Austex tracts in some special, unique way, different from the effect on the surrounding area, there is no claim here that they do. Schmidt and Austex may be impacted more severely than some others in the area, but the difference is one of degree and not of kind. Thus, we agree with the State that the severance damages claimed are not allowed by section 21.042(c).

### VI

Schmidt and Austex argue that the difficult process of determining the value of property is made more hypothetical and uncertain whenever relevant factors are excluded from consideration. As hard as it is to determine the value of property as it exists, it is harder still to determine its value as it might be. For this reason, they argue, the elements of

injury asserted in these cases, which unquestionably affect the value of their property, should be considered in determining damages. While we do not disagree with their assessment of the task of determining value, we cannot allow a recovery of damages not required by the Constitution and section 21.042.

\*     \*     \*     \*     \*     \*

For all the foregoing reasons, we conclude that Schmidt and Austex are not entitled to recover the severance damages they claim. Accordingly, the judgment of the court of appeals is reversed, and the judgment of the trial court is modified to exclude severance damages, and that judgment as modified is affirmed.

DOGGETT, J., joins in the judgment only.