TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00132-CV






Wanda Butler; Mary Bridgewater; and Dennis Butler, as Independent Executor


of the Estate of Gwendel Butler, Deceased, Appellants




v.




The State of Texas, Appellee







FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY


NO. 2075, HONORABLE, ORLINDA L. NARANJO, JUDGE PRESIDING







 This is a condemnation case brought by the State of Texas (the "State") to condemn 3.292
acres of land out of a parcel consisting of a total of 9.271 acres of land belonging to appellants Wanda
Butler, Mary Bridgewater, and Dennis Butler, as Independent Executor of the Estate of Gwendel Butler
(the "Butlers") for the construction of improvements to Highway 290. The case was tried to a jury. In
response to two special issues submitted to the jury, the jury awarded the Butlers $860,000 for the part
taken, but found that there was no diminution in value to the remainder tract as a result of the condemnation. 
Judgment was rendered accordingly. In two points of error, the Butlers argue that the trial court abused
its discretion in excluding testimony from the Butlers' land use planning expert, Jack Holford, concerning
how the proposed highway project would (1) create an unattractive view from the remainder and lessen
the visibility of the remainder to passersby; (2) divert traffic; (3) increase the circuity of travel to the
remainder, and (4) create construction inconvenience disturbing access to the remainder. We will affirm.


BACKGROUND


 In September 1991, the State instituted a condemnation action to condemn approximately
thirty-six percent (36%) of the Butlers' property abutting U.S. Highway 290 in the City of Austin. Highway
290 was a major arterial roadway consisting of five lanes, two going east, two going west, and a middle
lane used for turning. Much of the land abutting old Highway 290 was used for free-standing retail outlets
and other commercial developments. (1)

 The State condemned a substantial portion of the Butlers' property in order to convert
Highway 290 into a controlled access highway. The actual construction being built on the part taken is
as follows: (1) an eastbound frontage road consisting of three lanes; (2) three elevated eastbound main
traffic lanes; and (3) a small portion of an elevated westbound main traffic lane. The following diagram
depicts this proposed construction.























 After completion of the proposed project, (2) the primary traffic using Highway 290 will be
diverted to the elevated eastbound and westbound lanes. The elevated lanes will range in height from five
to nine feet above ground level as they cross the breadth of the part taken. Given the controlled access
of the elevated lanes, the primary traffic using Highway 290 will be diverted to the elevated main traffic
lanes and access to the Butlers' property will be more circuitous and less convenient.

 On March 10, 1992, three special commissioners assessed damages caused by the
condemnation at $1,050,000. Both parties filed objections to this award and demanded a jury trial. On
April 28, 1992, the State deposited the commissioners' award in the registry of the court, thereby
establishing the date of the taking. (3) See Tex. Prop. Code Ann. § 21.021(a)(2).

 At trial, the Butlers presented two expert witnesses to establish the value of the part taken
and the diminution in value of the remainder tract as a result of the condemnation. Relevant to this appeal
is the following synopsis of testimony by the Butlers' land use planning expert, Jack Holford.

 Holford explained to the jury in detail his opinion of the "highest and best use" of the
Butlers' property both before and after the condemnation given its size, shape, topography, and location. 
Holford testified that prior to the taking, the Butlers' property could be economically, legally, (4) and
physically used for five "impulse-type" retail outlets given its location on a major arterial roadway. Holford
further explained that property which could accommodate an "impulse-type" retail outlet, such as a fast
food restaurant, is extremely valuable in the market place because it allows those driving down an arterial
roadway to simply exit and access such businesses. Various exhibits demonstrating Holford's conceptual
plan for the property prior to the condemnation were published to the jury for their consideration.

 Holford then explained to the jury how, in his opinion, the condemnation would affect his
conceptual plan for the entire tract and re-evaluated the "highest and best use" for the remaining property. 
He explained that the size, shape, and topography of the property would be profoundly affected by the
State's substantial taking, thus causing significant damage to the remainder. In particular, he explained that
the economic, legal, and physical limitations of the remainder property would allow for only two, or possibly
three, retail outlets rather than five, as was the case prior to the condemnation. Moreover, he explained
that the retail outlets suitable for the property would have to be "destination-type" businesses rather than
"impulse-type" businesses because the watershed ordinances and the configuration of the remainder would
require that the retail outlets be placed farther away from the frontage road. (5) In other words, he explained
that the type of retail outlets suitable for the remainder would be those to which one plans to go, i.e.,
"destination-type" outlets, instead of those one sees and then decides to visit, i.e., "impulse-type" outlets.

 Finally, in testimony excluded from the jury because the trial court found it to concern
non-compensable damage items outlined in the Schmidt case, (6) Holford explained other factors that would,
in his opinion, diminish the value of the remainder. Specifically, he explained: (1) how an eight-to-ten foot
concrete retaining wall would create an unattractive view from the remainder and how the primary traffic
traveling on the elevated lanes would have little or no view of the remainder; (2) how a controlled access
highway would divert the primary traffic using Highway 290 from the graded lanes in front of the Butlers'
property to elevated lanes passing above the property; (3) how a controlled access highway with limited
on and off-ramps would increase the circuity of travel to motorists wanting to visit the remainder; and
finally, (4) how the construction activities on the part taken would make access to the remainder property
temporarily inconvenient.

 After hearing testimony from the Butlers' appraisal and engineering experts, (7) as well as from
the State's appraisal and land use planning experts, the jury returned a verdict awarding the Butlers
$860,000 for the part taken. The jury, however, refused to award any damages for a diminution in value
to the Butlers' remainder tract. Judgment was rendered accordingly.

 On appeal, the Butlers limit their challenge to the issue of remainder damages. The Butlers
contend in their points of error that the exclusion of Holford's testimony pursuant to Schmidt v. State,
concerning (1) visibility to and from the remainder tract, (2) diversion of traffic, (3) circuity of travel, and
(4) construction inconvenience led to the rendition of an improper verdict. We will therefore examine the
Schmidt case in detail and then consider the Butlers' argument for each of the excluded factors in turn.


DISCUSSION


 In Schmidt, the State condemned a six-to-seven foot strip of Schmidt's land abutting U.S.
Highway 183 to meet minimum right-of-way requirements for federal funding to convert Highway 183 into
a controlled access highway. (8) Prior to any construction, Highway 183 had six lanes, three for traffic in each
direction separated by a grassy median. Much of the land abutting Highway 183, including the Schmidt
tract, was used for free-standing retail outlets and other commercial developments. The buildings on the
Schmidt tract were clearly visible from the highway and could be directly accessed via driveways abutting
Highway 183. Traffic going in the opposite direction was required to cross clearly marked intersections
and either use side streets to gain entrance to the Schmidt buildings or return back in the opposite direction
and use the driveways abutting the highway. Schmidt, 867 S.W.2d at 771.

 The roadway construction, which was done entirely on the State's existing right-of-
way and not on any of the Schmidt's condemned property, elevated the main traffic lanes some thirty-seven (37) feet in the air. As a result, the Schmidt buildings were less visible to the primary traffic using
Highway 183. Moreover, although the six lanes at grade as well as the access from such lanes remained
unchanged, the primary traffic was diverted to the elevated lanes and access to the Schmidt buildings
became more circuitous and less convenient for most motorists using Highway 183. Id. at 771-72.

 At trial, the only issue for the jury was Schmidt's claim for severance damages to the
remainder. (9) At the conclusion of the evidence, the jury was instructed to find "the amount of any decrease
in the fair market value of the remainder, immediately after the condemnation, considering all of the uses
to which the narrow strip will or may be put." Schmidt, 805 S.W.2d at 28. Pursuant to this instruction,
the jury awarded Schmidt $74,880 and judgment was rendered accordingly.

 On appeal to this Court, the State argued that the trial court erred in admitting evidence
concerning (1) diminished visibility of the Schmidt buildings for the primary traffic using Highway 183, (2)
diversion of traffic flow from graded lanes to the elevated lanes, (3) increased circuity of travel, and finally,
(4) interference with the use of the property caused by construction activities (hereinafter we will refer to
these four items, visibility, diversion of traffic, circuity of travel, and construction inconvenience as
the "Schmidt Factors"). We disagreed with the State and held that the Schmidt Factors were admissible,
not as independent elements of damage, but to help determine the diminution in the fair market value of the
remaining property after the condemnation.

 The Texas Supreme Court reversed our ruling and held that the Schmidt Factors, as
presented under the facts of that case, were not compensable and thus not admissible at trial. See Schmidt,
867 S.W.2d at 781. In doing so, the supreme court did not overrule or disapprove of its prior opinions
regarding the measure of damages to the remainder. (10) In fact, the Court stated that the rule we recited in
State v. Carpenter, 89 S.W.2d 194 (Tex. 1936), was as "settled" as any rule in our jurisprudence:


 We are of the opinion that the proper rule for ascertaining the measure of damage
to the remainder of a tract of land where a part only has been taken for public use is
directly analogous to the rule which is applicable when there has been a permanent injury
to land by reason of the construction of a public improvement, or the construction of an
improvement by a private agency exercising the right of eminent domain. By this rule the
damages are to be determined by ascertaining the difference between the market value of
the remainder of the tract immediately before the taking and the market value of the
remainder of the tract immediately after the appropriation, taking into consideration the
nature of the improvement, and the use to which the land taken is to be put. Of course,
this rule relates to the ascertainment of the damages to the property itself. There may
possibly be items of special damages which may not be accurately reflected in the
difference between the market value before and the market value after, but everything
which affects the market value of the land itself, having due regard for past and
probable future injuries, may be accurately reflected by ascertaining the difference
in value, when all the legitimate testimony is properly submitted to the jury for
consideration.


* * *


 Generally, it may be said that it is proper as touching the matter of the value and
depreciation in value to admit evidence upon all such matters as suitability and
adaptability, surroundings, conditions before and after, and all circumstances which
tend to increase or diminish the present market value. Evidence should be excluded
relating to remote, speculative, and conjectural uses, as well as injuries, which are
not reflected in the present market value of the property.



Schmidt, 867 S.W.2d 772-73 (quoting Carpenter, 89 S.W.2d at 197-98, 200) (emphasis added). 

 Moreover, the supreme court limited somewhat its holding that the Schmidt Factors are
non-compensable evidence of remainder damages, stating that it was "reluctant to hold that such damages
[could] never be recovered." Id. at 777. As discussed below, the supreme court gave two other reasons,
it believed to be consistent with Carpenter for excluding the Schmidt Factors.

 First, the supreme court stated that the Schmidt Factors were not compensable under the
facts of the Schmidt case because such damages "did not result from the taking of [Schmidt's] property,
but from the State's new use of its existing right-of-way and of property taken from other landowners
to widen it." Id. (Emphasis added). The supreme court stated:


 In the present cases it is clear that the diminution in value claimed by Schmidt and
Austex in their remaining property is due entirely to the State's modifications to Highway
183 and not to the use of the strip taken from each tract. The diversion of traffic, circuity
of travel, and impaired visibility are all attributable to the conversion of Highway 183 to a
controlled access highway. This conversion is to be accomplished, not on the small
strips taken from the Schmidt and Austex tracts, but by changes in the entire
roadway. Even the claim of inconvenience due to construction is based upon
activities up and down the roadway and not simply those conducted on the strips
taken.



Id. at 778-79 (emphasis added). Furthermore, the court explained that under such facts (i.e., where the
remainder damage arising from the Schmidt Factors does not occur on the part taken), the Schmidt Factors
are compensable only if the landowner has established that:


 (1) the land taken from the condemnee landowner was indispensable to the ...
project; (2) the land taken constituted a substantial (not inconsequential) part of the tract
devoted to the project; and (3) the damages resulting to the land not taken from the use
of the land taken were inseparable from those to the same land flowing from the
condemnor government's use of its adjoining land in the ... project.



Id. at 778 (quoting United States v. 15.65 Acres of Land, 689 F.2d 1329, 1332 (9th Cir.1982), cert.
denied, 460 U.S. 1041 (1983) as an exception to the rule cited in Campbell v. United States, 266 U.S.
368, 372 (1924), that "the just compensation assured by the Fifth Amendment to an owner, a part of
whose land is taken for public use, does not include the diminution in value of the remainder caused by the
acquisition and use of adjoining lands of others for the same undertaking."). (11) Because the supreme court
held that the part taken "did not constitute a substantial part of the property devoted to the project" and
that "the damages resulting to the remainder [were] not inseparable from those caused by the taking,"
Schmidt was not entitled to compensation for the diminution in value to the remainder caused by the
Schmidt Factors. Id. at 779.

 Second, the supreme court held that the Schmidt Factors were not compensable because
Schmidt neither pleaded nor proved how the Schmidt Factors damaged his tract "in some special, unique
way, different from the effect on the [tracts in the] surrounding area." Id. at 781. As authority, the supreme
court cited Texas Property Code section 21.042(d), which prohibits recovery for injuries that property
owners experience in common with the general community. (12) 

 With that summary of Schmidt in mind, the main contention the Butlers assert on appeal
is that the facts of the instant cause are so distinguishable from Schmidt that "this is simply not a Schmidt
case." Therefore, the Butlers argue that Holford's testimony concerning the Schmidt Factors should not
have been excluded. The specific distinctions the Butlers assert are as follows: (1) unlike Schmidt, where
only a small strip of land was condemned, the State in the instant cause condemned thirty-six percent of
the Butlers' property; (2) unlike Schmidt, where none of the highway construction took place on the
condemned property, the State in the instant cause is building a substantial portion of the highway on the
part taken; and finally, (3) unlike Schmidt, the Butlers are claiming that the Schmidt Factors do affect the
remainder "in a special, unique way" not shared by the surrounding landowners -- namely the "adaptability
of the remainder to its highest and best use."

 After a careful reading of Schmidt, we agree that the Butlers' distinctions are significant
and that the trial court interpreted Schmidt too broadly by excluding all of Holford's voir dire testimony. 
Furthermore, in reviewing later opinions by the Texas Supreme Court and our sister jurisdictions, we
believe that evidence regarding access to the remainder is admissible if it relates to more than a diversion
of traffic or increased circuity of travel shared by the general community. See State v. Heal, 917 S.W.2d
6, 8 (Tex. 1996) (impaired access is a compensable special damage); State v. Munday, 868 S.W.2d 319,
320 (Tex. 1993), cert denied, 115 S. Ct. 64 (1994) (partial, permanent denial of access to public
roadway from the remainder is compensable); Precast Structures, Inc. v. City of Houston, 942 S.W.2d
632, 637 (Tex. App.--Houston [14th Dist.] 1996, no writ) (damages directly attributable to impairment
of access are compensable); Holiday Inns, Inc. v. State, 931 S.W.2d 614, 623 (Tex. App.--Amarillo
1996, writ denied) (state must pay damages when access is completely denied or materially and
substantially impaired). Without contradicting Schmidt, these cases recognize that access to one's
property is an obvious factor that a willing buyer and a willing seller would consider when negotiating the
fair market value of a piece of property; therefore, under the appropriate circumstances, such evidence
must be considered at trial. Having said this, we now turn to the specific testimony on voir dire examination
of Holford that was excluded by the trial court.


Visibility

 In terms of visibility, Holford testified to two items on voir dire examination that he believed
would change the use of the remainder and thus diminish its value. First, Holford testified that the proposed
construction would include a concrete retaining wall which would create an unattractive view from the
remainder. He briefly testified that the unattractive view caused by the retaining wall would be a
"detriment" to the property making it less "desirable" to certain unspecified businesses. Second, Holford
testified as to how the elevated lanes would diminish the view of the remainder from the roadway, thus
making the property less desirable to certain "retail" (particularly "impulse") type businesses.

 As to the latter (i.e., diminished view to passersby), we cannot say that the trial court
abused its discretion in excluding such testimony in light of Schmidt and its progeny. The case law is clear
that a "right to be seen is not a legally cognizable element of damage." See Schmidt, 867 S.W.2d at 774
(quoting Julius L. Sackman & Patrick J. Rohan, Nichols, The Law of Eminent Domain, § 14.13[2], at
14-310 (3d ed. rev. 1992)) (emphasis added); Munday, 868 S.W.2d at 320; State v. Edwards, 868
S.W.2d 321, 322 (Tex. 1993), cert. denied, 115 S. Ct. 64 (1994); State v. Centennial Mortgage
Corp., 867 S.W.2d 783 (Tex. 1993), cert. denied, 115 S. Ct. 64 (1994). However, as to the evidence
concerning the view from the remainder, we hold that the trial court erred in excluding such evidence. 
Evidence concerning the aesthetic view from the remainder is clearly not a Schmidt Factor; it is a
compensable element of damage to the remainder that the landowner is entitled to present to the jury. See
Sackman & Rohan, § 14A.03[5] at 14A-60 (loss of aesthetic value is compensable where it can be shown
that it resulted in a loss of market value to the remainder).

 Having held that evidence regarding the view from the remainder property is admissible,
we must now determine whether the trial court's error was harmful. See Tex. R. App. P. 44.1. In
determining whether the trial court's error was harmful, we must look at the whole record and determine
if the exclusion of evidence affected a "substantial right" of the Butlers. See Tex. R. Evid. 103(a) (error
may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the
party is affected).

 As stated above, the excluded testimony concerning visibility from the remainder was very
brief. Holford did not explain, nor did he estimate, any damage resulting from the unattractive view from
the remainder. Specifically, he did not explain how the unattractive view caused by a concrete retaining
wall would change the "use" of the property in a way that damages to the remainder would result. We note
that while Holford explained that a diminished view of the property would affect "retail" (particularly
"impulse") type businesses, he did not explain how such businesses are affected by an unattractive view
from the remainder. In fact, Holford acknowledged on voir dire that there are "many" retail outlets that
are located adjacent to concrete retaining walls of major highways.

 Moreover, the record shows that the Butlers were able to present substantial testimony by
Holford concerning the change in use of the remainder given the condemnation. In particular, the jury heard
in detail how the change in size, shape, and topography of the property would affect the "highest and best
use" of the Butlers' land. Furthermore, Holford was able to explain to the jury some of the reasons why
the less valuable "destination type" outlets would be more suitable for the remainder than the "impulse type"
outlets after the condemnation. And finally, the Butlers' appraiser was able to estimate for the jury how
the remainder property suffered a diminution in value based upon Holford's conceptual plans for the
property both before and after the condemnation.

 Even after the jury heard this enormous amount of evidence regarding the impact of the
condemnation, they still refused to award damages for the diminution in value to the remainder. The
excluded testimony was, at best, incrementally cumulative of this body of testimony. Therefore, we hold
that the trial court's exclusion of Holford's brief testimony concerning the visibility from the remainder was
harmless and not reversible error.


Diversion of Traffic and Circuity of Travel

 On voir dire, the only elicited testimony concerning diversion of traffic and circuity of travel
that had not been discussed during the Butlers' case-in-chief concerned the diminished traffic count in front
of the remainder property after the highway construction project was completed. Specifically, Holford
testified that the "accessible" traffic volume of approximately 34,000 cars would "diminish significantly" after
the construction of the controlled access highway was completed. He explained that this significant
diminishment in traffic count would cause a change in the "development potential" of the remainder.

 After reviewing this testimony, we cannot say that the trial court abused its discretion in
excluding the testimony in view of well-settled law that "no abutting property owner has a vested interest
in the traffic that passes in front of his property." Schmidt, 867 S.W.2d at 776 (quoting Pennysavers Oil
Co. v. State, 334 S.W.2d 546, 549 (Tex. Civ. App.--San Antonio 1960, writ ref'd)); see also State v.
Wood Oil Distrib., Inc., 751 S.W.2d 863, 865 (Tex. 1988) (it is well settled that damages to a
condemnee's business which result merely from traffic being required to travel a more circuitous route to
reach condemnee's property are not compensable). Because Holford's testimony primarily concerned the
effect of reduced traffic passing in front of the Butlers' property, we conclude that the trial court did not
abuse its discretion in excluding this evidence.


Construction Inconvenience

 With regard to construction inconvenience, Holford testified on voir dire examination that
due to the construction activities, access to the remainder would at times be temporarily interrupted. 
Specifically, Holford testified that "construction equipment," "piles of dirt," and "stockpiled material" on
the part taken, as well as "cuts being accomplished on the [part taken]" would temporarily interrupt access
to the remainder tract. In particular, Holford testified on voir dire as follows:


Q: (by the Butlers' counsel): Now with respect to the activities of the State within the
part taken, does that create, in and of itself, problems of
access to the remainder tract?


A: (Holford) It has presently and will continue to do so until
the improvements are either completed or to a
point you can access the road in a reasonable
manner, which is - presently, would not be
considered a reasonable manner.


* * *


Q: (by the State's counsel): [Is] there any evidence that access to the subject
property is cut off at any time that you have
gathered any information about the construction
activities going on the property?


A: (Holford) Yes.


Q: (by the State's counsel) Where is it cut off?


A: (Holford) Frequently during the daytime, and you cannot
access the property because of the construction
on this part taken.


Q: (by the State's counsel) And there is access through the rear of the
property?


A: (Holford) That is correct.


Q: (by State's counsel) And so would you characterize what you have
just said as a temporary status; that, periodically,
there would be access and other times there
won't be access?


A: (Holford) I would consider that a temporary status.



 Therefore, the essence of this testimony is that during the time the highway is being
constructed (i.e., between 1992-1998), access to the Butlers' property is hindered by the construction
activities. While this testimony might have been admissible had the Butlers sought special damages
concerning that issue, the only compensation the Butlers sought in the charge to the jury was for a
permanent diminution in value of the remainder immediately after the date of taking on April 28, 1992. 
The question submitted to the jury regarding this issue was as follows:


 What was the decrease, if any, in the "Fair Market Value" of the remaining
260,445 square feet (or 5.979 acres) of the Condemnees' land, immediately after the
taking on April 28, 1992, taking into consideration the effect of the condemnation on the
value of the remaining property.



This charge envisions permanent damage to the remainder tract. By Holford's own admission, his
testimony regarding construction inconvenience was of a "temporary" nature. Therefore, we cannot say
that the trial court abused its discretion in excluding testimony regarding a temporary loss of access caused
by construction inconvenience since this was irrelevant to the issue submitted 

to the jury.


CONCLUSION


 Having determined that the trial court's exclusion of Holford's testimony did not constitute
reversible error, we overrule the Butlers' two points of error and affirm the judgment of the trial court.



 

 Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: July 16, 1998

Publish
1. At the time of trial, the Butlers were using their property as both a mobile home park called "Holiday
Mobile Home Park" and an "informal used car lot." At the time of trial, there were about forty (40) mobile
home pads on the site. Immediately adjacent to the Butlers' property were a post office and a bank. 
Moreover, as one exhibit shows, there were numerous other commercial developments in the general
vicinity of the Butlers' property.
2. The record indicates that the proposed construction will be completed by the summer of 1998.
3. On May 15, 1992, the Butlers received this deposit pursuant to an order granting their motion to
withdraw the $1,050,000 from the court's registry. The deposit of the special commissioners' award
permitted the State to take possession of the part of the Butlers' property that was condemned.
4. Because the Butlers' property is located in the Barton Creek watershed, it is subject to various
watershed ordinances. Holford explained in great detail how such ordinances affect development of the
property and why his conceptual plan represented the "highest and best use" of the land given the
ordinances.
5. Holford testified that prior to the condemnation, all of the outlets could be placed on the front of the
property abutting the highway and still conform with the various watershed ordinances. However, given
the reduced size of the remainder, Holford testified that some of the outlets would have to be placed off
of the frontage road and behind the other outlets to conform with the legal restrictions imposed on
developing the remainder.
6. State v. Schmidt, 805 S.W.2d 25 (Tex. App.--Austin 1991), rev'd, 867 S.W.2d 769 (Tex. 1993),
cert denied, 115 S. Ct. 64 (1994).
7. Following Holford's testimony, the Butlers introduced testimony of an appraiser who informed the
jury about estimated values for the remainder and part taken. His opinion regarding such values were
significantly based in part on Holford's conceptual plans for the Butlers' property both before and after the
condemnation.
8. The Schmidt case involved the condemnation of a six-to-seven foot strip of property stretching
across two tracts of land: one tract owned by a trust established for Leon A. Schmidt's children (the
"Schmidt tract") and the other owned by Austex Ltd. The issues surrounding both tracts were consolidated
on appeal into what we have referred to as the Schmidt case. Therefore, for the sake of simplicity, we will
refer to the claims made in the case as the "Schmidt" claims and the tracts involved in the case as the
"Schmidt" tract.
9. The award by the special commissioners for the part taken was stipulated as the correct amount.
10. As authority for our decision in Schmidt, we cited numerous Texas Supreme Court cases for the
proposition that evidence is always admissible when it "reasonably bear[s] upon the negotiations between
a willing buyer and a willing seller in reaching an agreed price for the property." See Schmidt, 805 S.W.2d
at 35 (citing State v. Schaefer, 530 S.W.2d 813 (Tex. 1975); City of Fort Worth v. Corbin, 504
S.W.2d 828 (Tex. 1974); City of Pearland v. Alexander, 483 S.W.2d 244 (Tex. 1972); City of Austin
v. Cannizzo, 267 S.W.2d 808 (Tex. 1954); Sample v. Tennessee Gas Transmission Co., 251 S.W.2d
221 (Tex. 1952); State v. Carpenter, 89 S.W.2d 194 (Tex. 1936)); see also U.S. Const. amend. V
(requiring compensation only when property is "taken"); Tex. Const. art. I, § 17 (requiring compensation
when property is taken, damaged, or destroyed); Tex. Prop. Code Ann. § 21.042 (West 1984 &
Supp.1998) (entitling a landowner to recover for injuries resulting from a taking of part of its property by
condemnation, specifically including the effect of the condemnation on the value of its remaining property).
11. One commentator has found it curious that the Texas Supreme Court would incorporate a 1924
federal condemnation case into modern Texas eminent domain law, especially considering the fact that the
United States Constitution unlike our Texas Constitution does not permit a claim for the damaging of
remainder property. See Michael C. Singley, The Road to Nowhere: The Texas Supreme Court
Departs from the Majority Rule by Limiting Highway Condemnation Damages in State v. Schmidt,
14 Rev. Litig. 519, 520-21 (1995).
12. Section 21.042(d) provides:


 In estimating injury or benefit under Subsection (c), the special commissioners shall
consider an injury or benefit that is peculiar to the property owner and that relates to the
property owner's ownership, use, or enjoyment of the particular parcel of real property, but
they may not consider an injury or benefit that the property owner experiences in common
with the general community.


Tex. Prop. Code Ann. § 21.042 (West 1994).



ourt's registry. The deposit of the special commissioners' award
permitted the State to take possession of the part of the Butlers' property that was condemned.
4. Because the Butlers' property is located in the Barton Creek watershed, it is subject to various
watershed ordinances. Holford explained in great detail how such ordinances affect development of the
property and why his conceptual plan represented the "highest and best use" of the land given the
ordinances.
5. Holford testified that prior to the condemnation, all of the outlets could be placed on the front of the
property abutting the highway and still conform with the various watershed ordinances. However, given
the reduced size of the remainder, Holford testified that some of the outlets would have to be placed off
of the frontage road and behind the other outlets to conform with the legal restrictions imposed on
developing the remainder.
6. State v. Schmidt, 805 S.W.2d 25 (Tex. App.--Austin 1991), rev'd, 867 S.W.2d 769 (Tex. 1993),
cert denied, 115 S. Ct. 64 (1994).
7. Following Holford's testimony, the Butlers introduced testimony of an appraiser who informed the
jury about estimated values for the remainder and part taken. His opinion regarding such values were
significantly based in part on Holford's conceptual plans for the Butlers' property both before and after the
condemnation.