The STATE of Texas, Appellant/Cross–Appellee

v.

COLONIA TEPEYAC, LTD., A Texas Limited Partnership, Appellee/Cross–Appellant.

No. 05–10–01248–CV.

Court of Appeals of Texas, Dallas.

Aug. 2, 2012.

---

■■■■■■■■■■■■■■■■■■

Susan Desmarais Bonnen, Hayat F. Nassour, Assistant Attorneys General, Transportation Div., Austin, TX, for Appellant/Cross–Appellee.

Kenneth B. Chaiken, Chaiken & Chaiken, P.C., Jay Krystinik, Bryan Cave, LLP, Dallas, TX, for Appellee/Cross–Appellant.

Before Justices FITZGERALD, MURPHY, and FILLMORE.

## OPINION

Opinion By Justice FITZGERALD.

This is a condemnation case. A jury awarded the landowner, appellee/cross-appellant Colonia Tepeyac, Ltd., about $937,000, and the trial judge rendered judgment on the jury verdict after allowing an offset for money already paid. The State appeals, raising four issues including jury-charge error. We conclude that there was charge error and so reverse and remand for further proceedings.

## I. BACKGROUND

Colonia owns an apartment complex in Dallas, Texas, that is located northeast of the intersection of Interstate Highway 30 and State Highway Loop 12. The State decided to upgrade the highway interchange at that intersection. The upgrade included the construction of a new flyover ramp that would directly connect westbound I–30 with northbound Loop 12. To accommodate the requirements of the ramp, the State condemned the southwest corner of Colonia's land, an area amounting to about 4,476 square feet. The State refers to this parcel as Part I. Trial evidence showed that the condemnation of Part I was going to cause one of the complex's thirty-three buildings to violate a setback requirement, and that the best remedy for the violation was demolition of the entire building. The State also condemned a second parcel of Colonia's land, a narrow strip of land running along the western boundary of the property abutting Loop 12's frontage road. This strip of land, referred to as Part II, amounts to about 1,719 square feet. The State intends to use Part II as a clear zone in connection with the movement of utilities. The State also intends to build concrete noise walls on both Part I and Part II.

The State filed its petition for condemnation in April 2006. Special commissioners were appointed, and after a hearing they rendered an award of $265,500 as Colonia's damages from the condemnation sought by the State. Both Colonia and the State objected to the award. The State deposited $265,500 into the registry of the court, and Colonia eventually got permission from the court to withdraw those funds.

The case was tried to a jury. Douglas Hickok, who is president of Colonia's general partner, testified that the diminution in value suffered by the remainder property was about $3.4 million. Colonia's expert witness Mark Sikes, a real estate appraiser, testified that Colonia's damages were $1.75 million. The State's expert witness Grant Wall, also a real estate appraiser, testified that Colonia's total damages were $315,030. A single question concerning Colonia's damages was submitted to the jury. The jury answered the question $937,034. The trial judge rendered judgment for Colonia in the amount of $671,534, which was the jury's finding less the $265,500 already received by Colonia. Both parties appealed, but in its brief Colonia raises no cross-appeal issues and af-

firmatively states that it has elected to withdraw its cross-appeal.

## II. ANALYSIS

The State raises four issues on appeal. In one issue, it argues that the trial judge erroneously instructed the jury that it could award Colonia damages for injuries experienced in common with the general community. Concluding that the State's jury-charge argument is meritorious, we limit our analysis to that issue.

### A. Standard of review

■■■ We review a trial judge's decision to submit or refuse a particular jury instruction under an abuse-of-discretion standard of review. *Thota v. Young*, 366 S.W.3d 678, 687 (Tex.2012). An instruction is proper if it assists the jury, accurately states the law, and finds support in the pleadings and evidence. *Id.* Charge error is harmful if it probably caused an improper judgment or probably prevented the appellant from properly presenting its case to the appellate court. *Id.* Charge error is generally considered harmful if it relates to a contested, critical issue. *Id.*

### B. The instruction in question and preservation of error

■■ The jury charge included the following instructions and question:

> In estimating injury or benefit to the Remainder, you shall consider only an injury or benefit that is peculiar to the Landowner and that relates to the Landowner's ownership, use, or enjoyment of the particular parcel of real property owned by the Landowner, but you shall not consider an injury or benefit that the Landowner experiences in common with the general community.
> If: a) the land taken from the Landowner was indispensable to the Project; *b) the land taken constituted a substan-*

> *tial part of the Landowner's tract that was devoted to the Project;* and, c) the damages resulting to the Landowner's Remainder, from the State's use of the land taken, are inseparable from the damages to the same land flowing from the State's use of its adjoining right of way in the Project, Landowner may be entitled to recover compensation for such damages even if the damages are experienced by the Landowner in common with the general community.

> . . .

> What amount of damages shall be awarded to the Landowner?

> You are instructed that in assessing damages you are to determine the difference between the Fair Market Value of the Landowner's Whole Property immediately before the taking on March 13, 2007, and the Fair Market Value of the Remainder immediately after the taking on March 13, 2007.

(Emphasis added.) On appeal, the State challenges the second quoted paragraph above. The State argues that if the exception set forth in that paragraph exists, the italicized subpart (b) of the paragraph is wrong because it refers to "the Landowner's tract" instead of to the tract being used by the State for its project.

We first consider error preservation. During the charge conference, the State objected to the italicized portion of the jury instructions, arguing that it misstated the law, commented on the evidence, and would be confusing to the jury. In explaining its objection, the State argued that the italicized words "the Landowner's tract" were incorrect, and that under the law the instruction should refer to the land being used by the State for the entire project rather than the landowner's land. The objection sparked a discussion spanning roughly the next twenty-five pages of

reporter's record. The trial judge did not expressly overrule the State's objection, but we conclude that the judge implicitly overruled it by failing to change the jury charge at the conclusion of the charge conference, after a lengthy discussion of the State's objection. *See* Tex.R.App. P. 33.1(a)(2)(A) (providing that an objection is preserved by an implicit ruling by the trial judge); *Cruz v. Andrews Restoration, Inc.,* 364 S.W.3d 817, 830 (Tex.2012) (stating that existence of implicit ruling on jury-charge issue depends on whether aggrieved party can "show that the trial court was aware of the party's request and denied it").

The State preserved its argument concerning subpart (b) of the second paragraph of jury instructions.

## C. Applicable law

When the State takes only part of a landowner's property, the State must make adequate compensation both for the part taken and for any severance damages to the remainder not taken. *State v. Schmidt,* 867 S.W.2d 769, 772 (Tex.1993); *Wells Fargo Bank, Minn., N.A. v. N. Cent. Plaza I, L.L.P.,* 194 S.W.3d 723, 728 (Tex. App.-Dallas 2006, pet. denied). This case concerns the proper measure of severance damages with respect to remainder property. Such damages are generally calculated by taking the difference between the market value of the remainder property immediately before and after the condemnation, considering the nature of any improvements and the use of the land taken. *Cnty. of Bexar v. Santikos,* 144 S.W.3d 455, 459 (Tex.2004).

Not all damages to remainder property are compensable. *Id.* As a general rule, damages to remainder property are recoverable only to the extent they arise from public use of the land taken, as opposed to the use of land the public al-ready owned or the use of land taken from a different owner. *See id.* at 462; *Schmidt,* 867 S.W.2d at 777–78; *see also* Tex. Prop.Code Ann. § 21.042(c) (West Supp.2012). The court in *Schmidt* referred to this as the *Campbell* rule, after *Campbell v. United States,* 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328 (1924). *See Schmidt,* 867 S.W.2d at 778. An exception to the *Campbell* rule provides that the owner may recover remainder damages arising from the use of land other than the land taken from him if: (1) the land taken from the owner was indispensable to the project; (2) the land taken from the owner was a substantial rather than inconsequential part of the tract devoted to the project; and (3) the damages to the remainder caused by the use of the taken land are inseparable from those flowing from the use of other adjoining land in the project. *Santikos,* 144 S.W.3d at 463; *Interstate Northborough P'ship v. State,* 66 S.W.3d 213, 219 (Tex.2001); *Schmidt,* 867 S.W.2d at 778.

Another limitation on the compensability of remainder damages is that the injury must be peculiar to the owner of the taken land rather than an injury experienced in common with the general community. Tex. Prop.Code Ann. § 21.042(d); *Santikos,* 144 S.W.3d at 463. "It is the nature of the injury rather than its location that is critical in determining whether it is community," and therefore not compensable. *Schmidt,* 867 S.W.2d at 781. "Similar damages experienced by all or most of the properties in a given community or section is the quintessential notion of community damage." *Felts v. Harris Cnty.,* 915 S.W.2d 482, 485 (Tex.1996). In *Felts,* an inverse-condemnation case, the court held that increased traffic noise from construction of a new road is generally noncompensable community damage. *Id.* at 485–86 & n. 5. In *Schmidt,* the State's

elevation of a highway caused some adjoining businesses to suffer damages from the diversion of traffic, the increased inconvenience of access, and the businesses' impaired visibility, but the supreme court held that these were noncompensable community injuries in the absence of a showing that the owners were affected in a "special, unique way." *Schmidt,* 867 S.W.2d at 781.

■ We note that the *Campbell* rule and the community-damage rule are two distinct reasons for concluding that particular remainder damages are noncompensable. *See Interstate Northborough P'ship,* 66 S.W.3d at 221. Thus, even if the *Campbell* rule is satisfied because a landowner's remainder damages are caused by the State's use of the very land that is taken, the damages are not recoverable if they flow from community injury. *Id.*

### D. Application of the law to the facts

■ From the foregoing, it appears that the jury instructions given in this case were fundamentally flawed. The first paragraph quoted in Part II.B above instructs the jury that a community injury is not compensable. *See* Tex. Prop.Code Ann. § 21.042(d). The second paragraph purports to instruct the jury of an exception to the community-damage rule, but the stated elements of the exception are very similar to the elements of the exception to the *Campbell* rule, which requires remainder damages to arise from the public use of the property taken from the landowner. *See Schmidt,* 867 S.W.2d at 778. The parties have not cited any cases recognizing an exception to the community-damage rule of this sort, and our research has uncovered none.

■ We proceed to the State's argument that subpart (b) is erroneous even if there is an exception to the community-damage rule akin to the exception to the

*Campbell* rule. Again, we quote the relevant paragraph of instructions:

> If: a) the land taken from the Landowner was indispensable to the Project; *b) the land taken constituted a substantial part of the Landowner's tract that was devoted to the Project;* and, c) the damages resulting to the Landowner's Remainder, from the State's use of the land taken, are inseparable from the damages to the same land flowing from the State's use of its adjoining right of way in the Project, Landowner may be entitled to recover compensation for such damages even if the damages are experienced by the Landowner in common with the general community.

(Emphasis added.) A side-by-side comparison shows that subpart (b) of the instruction included an additional word— *Landowner's*—that did not appear in the exception embraced by the court in *Schmidt:*

> [The *Campbell* rule does not apply if:] (1) the land taken from the condemnee landowner was indispensable to the ... project; *(2) the land taken constituted a substantial (not inconsequential) part of the tract devoted to the project;* and (3) the damages resulting to the land not taken from the use of the land taken were inseparable from those to the same land flowing from the condemnor government's use of its adjoining land in the ... project.

*Schmidt,* 867 S.W.2d at 778 (quoting *United States v. 15.65 Acres of Land,* 689 F.2d 1329, 1332 (9th Cir.1982)) (emphasis added). And *Santikos* makes it clear that the second element requires the taken land to be a substantial part of the larger project, not a substantial part of the landowner's tract: "Even if [remainder] damages arise from use of adjoining land, they may still be recoverable if the land taken is an

indispensable and substantial part *of the general project,* and damages to the remainder cannot be separated between use of the condemned land and use of the adjoining land." 144 S.W.3d at 463 (emphasis added) (footnote omitted).

Because the jury instruction did not correctly state the second element of the exception to the *Campbell* rule, we conclude that the trial judge abused her discretion by submitting the instruction to the jury.

### E. Harmful error

■ The next question is whether the erroneous jury instruction was harmful error. The State argues that the erroneous wording of subpart (b) was harmful because under the instruction as worded the jury could not help but find subpart (b) in Colonia's favor. Although we agree with the State's argument as far as it goes, a proper harm analysis requires more. The ultimate question is whether the error probably caused the jury to award Colonia noncompensable damages. So the question is not whether the error probably caused the jury to find subpart (b) of the *Campbell* exception in Colonia's favor but whether the error probably caused the jury to find the *Campbell* exception as a whole in Colonia's favor. If it did, the jury would have awarded Colonia noncompensable community damage. Thus, we must then consider whether any evidence of noncompensable community damage was put before the jury, because if no such evidence was presented, the State could not have been harmed by an erroneous instruction allowing the jury to award Colonia community damage.

We first consider whether the jury probably would have rejected the exception to the *Campbell* rule if subpart (b) had properly asked them whether the land taken was a substantial part of the tract used for the project as a whole. We conclude that

the answer is yes. The evidence showed that the two Colonia tracts that were taken added up to roughly 6,195 square feet, or about 0.142 acres. But the evidence also showed that the project involved much more property than those two tracts; it involved modifications to the entire highway interchange in all four directions. As previously noted, Colonia's property is located northeast of the interchange of I–30 (which runs east—west) and Loop 12 (which runs north—south). State's exhibit 7 shows the interchange and indicates that several ramps will be built in various directions. Texas Department of Transportation civil engineer David Lott testified that the project extended about a quarter-mile both north and south from the interchange and about a tenth of a mile both west and east from the interchange. Based on this evidence, it is probable that the jury would have rejected the *Campbell* exception if subpart (b) of the instruction had been worded properly, and thus would have refused to award Colonia any community damage if properly instructed.

Colonia disputes this conclusion, arguing that, viewed qualitatively, the land taken from Colonia was a substantial part of the tract devoted to the project because without that land the flyover ramp could not be built and the related frontage-road expansion could not occur. We disagree with Colonia's interpretation of the law. The exception to the *Campbell* rule involves three distinct elements, of which the first is that the taken land must be indispensable to the project, and the second is that the taken land must be a substantial rather than inconsequential part of the tract devoted to the project. *Schmidt,* 867 S.W.2d at 778. Indispensability is a qualitative concept—the quality of being indispensable or absolutely necessary. *See* THE NEW OXFORD AMERICAN DICTIONARY 865 (2001). If the element of substantiality is

also qualitative, as Colonia argues, then the first element would swallow up the second, since an indispensable piece of land will always be qualitatively substantial and never inconsequential. To give both elements meaning, we must treat the second element as quantitative in nature. And from the perspective of quantity, the jury could and probably would have found that the land taken from Colonia was not a substantial part of the entire tract devoted to the project.

■ Because a properly instructed jury probably would not have awarded Colonia any community damage, we must now determine whether the jury was presented any evidence of noncompensable community damage that it could have awarded under the erroneous instruction. Again, it is "the nature of the injury rather than its location that is critical in determining whether it is community." *Schmidt*, 867 S.W.2d at 781. Diversion of traffic, inconvenience of access, and impaired visibility of the remainder that are caused by the project as a whole and that affect the entire area of the project are forms of community damage. *Id.* Traffic noise has a similar impact on the community as a whole and is therefore generally considered community damage, although the supreme court has left open the possibility that traffic noise might be compensable in exceptional circumstances, when it severely impairs the ownership interest in property. *Felts*, 915 S.W.2d at 485–86 & n. 5. In a factually similar case, a landowner argued that the construction of a high, steep ramp next to his property would create increased noise and the danger of flying debris, but the court of appeals held that these were examples of community damage. *Olson v. Harris Cnty.*, 807 S.W.2d 594, 595–96 (Tex.App.-Houston [1st Dist.] 1990, writ denied). By contrast, the supreme court held that damage to a remainder property was special to the property when the expansion of a frontage road brought the road much closer to the building on the property, caused the loss of an attractive landscaped front yard, and changed the building's classification from "A-" to "B-" or "C+." *Interstate Northborough P'ship*, 66 S.W.3d at 222–23.

We conclude that the jury was presented with significant evidence of noncompensable community damage, and that the erroneous jury instruction probably led the jury to include such damages in its award. Thus, the error was harmful. Douglas Hickok, the president of Colonia's general partner, testified that he was particularly concerned about the flyover ramp that would be built near the southwest corner of the apartment complex. Among the specific problems he associated with the flyover ramp were debris flying off the ramp, the increase in road noise, and the potential lack of access to and from the property. He testified that safety concerns and noise would drive tenants away from the complex. He acknowledged that the property experiences some road noise right now, but he opined there would be "a lot more road noise" once the flyover ramp was built. Colonia's expert witness Mark Sikes testified that he thought "sound issues from tires to engines to horns" would affect the quiet enjoyment of the remainder property and make the remainder property a riskier investment. He·based his damage calculation on his conclusion that the remainder property was going to be a riskier investment. Moreover, during closing argument counsel for Colonia identified noise as the first of several negative impacts that the project would have on the property. Finally, we note that the jury awarded over $600,000 more than the damages amount testified to by the State's damages expert, so the jury must have relied on the damages testimony of Hick-

ok, Sikes, or both in reaching its damages finding.

The foregoing testimony from Hickok and Sikes was evidence of community damage to the remainder property. Damage to a remainder property caused by debris flying off an elevated ramp is considered community damage. *Olson,* 807 S.W.2d at 596. Diversion of traffic and inconvenience of access are also generally considered community damage. *Schmidt,* 867 S.W.2d at 781. Most importantly, increased road noise is considered community damage unless it is so significant that it severely impairs the ownership interest in property. *Felts,* 915 S.W.2d at 485–86 & n. 5. Colonia refers us to no evidence that the increase in road noise, or even all of the negative impacts of the highway project as a whole, would severely impair Colonia's ownership interest in the property. Although Colonia's expert Sikes described the highway project as "kind of the straw that broke the camel's back," he qualified his testimony by saying, "I'm not going to say it's going to ruin the property to where it's a tear-down, but it's not helping it any." Thus, Sikes's testimony is not evidence of the *Felts* exception to the rule that increased road noise is an example of community damage.

Colonia urges us to conclude that the negative effects of increased road noise in this case are unique and peculiar to its remainder property alone, and thus constitute compensable special damage. For example, it points to evidence that no noise walls are going to be built in the highway project except on the land taken from Colonia and to evidence that the apartment complex is "pretty much" the only residential area so close to the highway. We reject Colonia's argument. Colonia's argument amounts to two assertions: the road noise from the newly constructed highway features is going to be worse at its remain-der property than it will be for other properties further away, and Colonia's injury from road noise will be unique because Colonia's property alone is residential in character. This is not sufficient to show that increased road noise is a compensable special damage. *Felts* indicates that Colonia must show that the increased road noise is so significant that it severely impairs Colonia's ownership interest in the property. 915 S.W.2d at 486 n. 5. Colonia's evidence did not cross that threshold.

## F. Conclusion

We conclude that the jury charge in this case was erroneous and probably caused the rendition of an improper judgment. The proper remedy, as requested by the State, is reversal and remand. *See Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157–58 (Tex.1994) (reversing and remanding because jury charge was defective but not immaterial). Because none of the State's other issues on appeal would entitle the State to greater relief than reversal and remand, we do not address them. *See* Tex.R.App. P. 47.1.

## III. Disposition

We dismiss the cross-appeal by appellee/cross-appellant Colonia Tepeyac, Ltd., and we reverse the trial court's judgment and remand the case for further proceedings.